In the matter of the Petition of EMMA LOUISE MCFARLIN, for leave to retract her election of dower.

*New Castle, Feb. 9, 1910.*

The Orphans' Court, in which the election of the widow not to take the provision for her in her husband's will, but to have her dower rights in lieu thereof, was made and recorded, has jurisdiction to determine a petition of the widow to retract her election and to be restored to her rights under the will, and grant appropriate equitable relief to her under terms.

A mistake by a party as to his antecedent existing legal rights, as distinguished from a mistake as to the legal import of the act done, furnishes a ground for equitable relief from the consequences of the mistake in cases where the mistake can be rectified without injury to the rights of others.

Where an election is made under a misapprehension of the law as to her dower rights, even though the mistake resulted from the erroneous advice of her counsel, a widow, so electing to take the provisions made by law in lieu of that made for her under her deceased husband's will, may be allowed to retract her election, where no rights of third persons who would be injured by a revocation have intervened.

Where a widow, shortly after her husband's death, voluntarily made a formal election in Court of the dower rights given to her by law in lieu of the provision of her husband's will, being then mistaken, through erroneous advice of her counsel, as to the nature of the dower rights, and supposing that under them she was entitled absolutely to one-half of the residue of her husband's personalty after payment of his debts, as well as to hold for life one-half of his real estate, whereas her dower rights were only to hold one-third of the real estate for life, with no interest in the personalty, she will be allowed to retract her election, in a case where no rights acquired subsequently to her election will be injuriously affected by a retraction.

The costs of the proceeding will be taxed against the petitioner, the widow.

An election is a designed choice of one thing rather than another, and the election cannot be made satisfactorily when there is at the time a misconception of the rights between which the choice is made.

An election made under a misapprehension of the antecedent legal rights, comes within the class of mistakes of law against the consequence of which relief is granted in equity.

PETITION of widow for leave to retract her election of dower.   The facts appear in the opinion.

Argued before CURTIS, Ch., and HASTINGS, J.

*Robert H. Richards* and *William S. Prickett*, for petitioner.
*William S. Hilles* and *C. W. Smith*, for executor and trustee under will of Robert McFarlin, deceased, and his devisees and heirs at law.

CURTIS, Chancellor (delivering the opinion of the Court):
The widow of Robert McFarlin, by her amended petition to the Orphans' Court, represented that by her husband's will, after giving the sum of $2,000 in trust for Samuel W. Stewart ,the residue of the estate, consisting of real and personal property, was given to Manolve McFarlin, in trust to pay over the net income to her for life, with remainder to other persons.   About two weeks after the probating of her husband's will, she by petition appeared in the Orphans' Court, and in accordance

with the statute in that behalf elected to take her dower out of the estate of her deceased husband in lieu of the provision made for her in the will in bar of her dower, and this election was duly recorded, pursuant to the order of the Court. It further appears that this election was made under misapprehension and mistake as to the nature, extent and value of her dower interest at the time of her election. At that time, she believed upon the advice of counsel, that her dower in her husband's estate entitled her to hold one-half of his real estate for life, and to be entitled absolutely to one-half of the residue of the personal estate of her deceased husband. Her husband left no children, or issue of deceased children, but a brother, and issue of a deceased brother. It is further represented that the executor had not settled the estate; that there were few, if any, creditors of her deceased husband; and that no one possessing greater equities could be prejudiced or personally affected by the retraction and nullification of her election; and she prayed to be allowed to retract her election and to be restored to her rights under the will of her husband.

Upon filing of the petition a rule was issued, directed to the executor and trustee under the will, and to all the devisees and heirs at law of the decedent, all of whom were *sui juris* and they have been served or have appeared. An answer has been filed by the executor, not denying the essential facts, claiming that the mistake of the widow was one of law, and not of fact, and alleging as a reason why she should not be allowed to retract that, after making her election, the widow had joined with the executor in making a lease of a farm of the decedent for one year from March 25th, 1909, and that she had received part of the rent; but the allegation respecting this receipt of rent shows that although she did not actually receive it, a check for the same was turned over to her counsel and returned to the solicitor for the executor, who has it in his possession. The case was fully argued by counsel.

The jurisdiction of the Orphans' Court to hear and determine the petition and to grant the relief prayed for is settled by the learned opinion of Chancellor Saulsbury, sitting in the Orphans' Court in the case of *Green v. Saulsbury*, in Kent

County, reported as an appendix in 6 *Del. Ch.* 371.   See, also, 33 *Atl.* 623.   By law the election of the widow is made in the Orphans' Court, and that Court is the one to hear and determine her petition for the revocation of the election.   It has jurisdiction of the subject matter, and it has power to issue process to acquire jurisdiction of the person interested.   In *Evans' Appeal*, 51 *Conn.* 435, the Court held that the Court in which the election was made was the proper Court to hear an application to retract it.

There are two principles involved in this case, one as to mistakes of law, and the other as to the requisite of a valid election.   Here the widow not only acted respecting her rights in and to the property of her deceased husband under a mistake of law; but she also exercised her right to elect certain rights therein in preference to other rights therein while under the same misapprehension of her rights. It also appears that not only was she mistaken as to the character of her rights independent of her husband's will, but she was also mistaken as to the amount of property she would receive under the several rights between which she made her choice when she made her election.   It is a general rule that a mistake of law pure and simple is not adequate ground for relief. But there are well defined exceptions to this rule.   Without undertaking to discuss the many phases of the question, it seems that a mistake by a party as to his antecedent existing legal right, as distinguished from a mistake as to the legal import of the act done, is one which should be and is recognized as a ground for equitable relief from the consequences of such mistake, where the mistake can be rectified without injury to the rights of others.   From this case there is eliminated any element of fraud, breach of confidence, misrepresentation, or unfair conduct toward the widow on the part of any person affected by her election.

The widow's error as to the law resulted solely from a mistake of her legal adviser, who informed her that by law she was entitled absolutely to one-half of the personal estate of her deceased husband, in addition to a right to the enjoyment of one-half of his real estate for life.   On the contrary, she was

only entitled to hold for life the third part of the lands and
tenements of which her deceased husband was seised at any
time during his life and to no part of his personal estate.   She
was not mistaken as to the act she was doing, for she knew she ·
was electing between the provision made for her under the will,
and that provision which the law would give her if she rejected
the provisions of the will.   Her case was like that if the person
who gave a release erroneously, supposing he had only a life
estate, while in fact he was the owner in fee, and who knew he
was releasing all the interest he had, but was mistaken as to
the character of the estate which he had.   The case of *Lans-
downe v. Lansdowne* (decided by Lord King) 2 *Jacob & W.*
205, was a case of mistake as to antecedent legal rights, which
was relieved by a court of equity.   In that case the facts are,
as follows: The plaintiff was the only son of the eldest brother
of a deceased intestate.   He had a dispute with his uncle, a
younger brother of the deceased, concerning their respective
rights to inherit the land of the deceased.   It was agreed by
them to consult a schoolmaster, one Hughes.   Hughes went
for instruction to a book called the Clerk's Remembrancer, and
there found the law laid down that "land could not ascend, but
always descended," and he thereupon informed the parties
that the land went to the youngest brother, the plaintiff's
uncle.   Upon this decision, the plaintiff and his uncle agreed
to share the land between them, and conveyances were executed
carrying out this arrangement.   The result was, of course, that
the plaintiff, through a mistake of law, conveyed away land
which clearly belonged to himself.   Discovering his error sub-
sequently, he filed a bill to be relieved.   Lord Chancellor King
held that the conveyances were made through a mistake and
misrepresentation of the law, and decreed that they should be
surrendered up and canceled.   So, also, in the case of *Cooper
v. Phibbs, L. R.*, 2 *H. L.* 149, there was a mistake as to the extent
of his antecedent legal right, which a court of equity allowed the
mistaken person to correct.   Being ignorant that certain prop-
erty belonged to him, and supposing it belonged to another,
the complainant agreed to lease it from the other at a certain
rent.   There was no fraud or unfair conduct, and the facts

were known equally by all parties.   The agreement was set aside on account of the mistake by the House of Lords.   Lord Westbury said it was what was ordinarily called a mistake of law, but held it should be treated as a mistake of fact.   In *Reynell v. Sprye*, 8 *Hare* 222, Vice Chancellor Wigram, after distinguishing cases of compromises where there are doubts as to the rights of the parties, says:

"But if the parties are ignorant of facts on which their rights depend, or erroneously assume that they know those rights, and deal with their property accordingly, not upon the principle of compromising doubts, this Court will relieve against such transactions."

The Court, in *Blakeman v. Blakeman*, 39 *Conn.* 320, applied the same principle.   There a right of way had become extinguished by the purchase of the servient estate by the owner of the dominant estate.   Afterwards the dominant estate was sold to a stranger, and conveyed by a deed which granted the land, "with its privileges and appurtenances," but did not expressly reserve the right of way over the servient estate.   Both grantor and grantee were equally ignorant that by the merger of the estates the easement had been extinguished, and the price given was sufficient to compensate for the right of way.   A court of equity granted relief to the grantee to correct the mistake. Pomeroy considers this a striking illustration of a proper application of his rule.   There was no mistake as to external facts, but solely as to legal rights.   The grantee erroneously assumed that he knew the legal rights involved, and there was no mistake as to the legal effect of the instrument which the parties executed.

Pomeroy, the learned author of the valuable work on *Equity Jurisprudence*, a recognized authority, after carefully considering the question in all its phases, lays down this general rule, which seems applicable to the facts under consideration, and classifies the uncertainties of the decisions:

"Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property, or contract, or personal status, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands for the purpose of affect-

ing such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact."

Other illustrations may be found in the many cases dealing with mistakes of law, but this need not be amplified. It is true that in most of these cases there were some external facts, more or less numerous, complicated and important, which must be considered in determining legal rights by applying legal principles thereto, and so the courts may well boldly treat such mistakes as mistakes of fact, while they are really mistakes of law. Whereas in the case at bar the question as to the character of the widow's rights under the will and those to which she is entitled in lieu thereof is purely one of law, the facts necessary to fix her rights being absolutely simple. On the one hand there is a clear and unambiguous provision for her in the will, and on the other hand the controlling facts are testacy, widowhood and seisin. Still the rule may well be held applicable even in such a case, where, as here (as will appear herein later) no injustice will be done to others by an application of the rule. In our own State, the decision of the Court of Chancery in *Marshall v. Rench*, 3 *Del. Ch.* 239, 259, furnishes an illustration of such a mistake of law as will not be corrected. There was in that case a mistake as to the legal effect of the instrument executed by him, and not as to the antecedent legal rights affected by the instrument. The principle there applied is well settled and applicable to the facts of that case, but not to the case under consideration. We conclude, therefore, that the mistake of the widow was clearly as to her antecedent legal rights at the time her election was made, and that this furnishes in this case a ground for the equitable relief which she seeks in this Court.

In the case at bar, there was not only a right to elect, but also a duty to elect, between the provision under the will and that which the law makes in lieu of such provision, for the general residuary clause included in this its operation a devise of the testator's real estate for the benefit of his widow. The widow could have made the election voluntarily, or could have

been cited into this Court to do so. An election made under a misapprehension of the antecedent legal rights comes within the class of mistakes of law against the consequences of which relief is granted in equity. But a more liberal rule applies as to the mistakes of those who make elections. Those making elections are, of course, entitled to full information of the facts affecting the choice, and cannot be compelled to so elect without having such information, or an opportunity to ascertain the same, and, as shown by Chancellor Saulsbury, have a right to have accounts taken. The general rule as to equitable relief afforded to those who have made an election based on their errors is stated by Pomeroy, (*Equity Jurisprudence*, § 512) as follows:

"It follows that where an election has been made in ignorance or under a mistake as to the real condition and value of the properties, or under a mistake as to the real nature and extent of the party's own rights, such a mistake is regarded as one of fact, rather than of law. The election itself is not binding, and a court of equitable powers will permit it to be revoked, unless the rights of third persons have intervened, which would be interfered with by the revocation."

In the case of *Green v. Saulsbury, supra*, Chancellor Saulsbury laid down a rule, as to the revocation of elections, which, however, he did not apply in that case. He thus stated a rule:

"I conceive it to be settled law that acts done by a party before he or she is fully informed of his or her rights will not, generally speaking, amount to an election; and where an election has in fact been made, as in this case, without full information, and without the means of full information, I conceive it would be inequitable to hold a widow to such an election, if no other relief than allowing her to revoke it could be afforded."

In that case he found "that the election was made by the widow without full knowledge of the condition of the estate, as she alleges, and without the opportunity for such knowledge but upon the faith of statements contained in the petition made by the administrator, upon which the order of sale was obtained, statements doubtless believed at the time by all parties to be true." Still he declined to allow the revocation "already made under a misapprehension of facts" until it had been ascertained whether, even under her election to take under the will, she

had not such a superior right as a purchaser for value as against creditors of her deceased husband as would afford her ample relief otherwise, viz., by securing to her an income for life from a fund consisting of part of the purchase money of land of her husband as against such creditors. It will readily be seen that that case is not an authority against the right of the petitioner before this Court. On the contrary, it is clearly intimated that a revocation would be granted, if there was no other way to protect her. In the case cited there was no mistake as to her right as widow in lieu of the provisions in the will. Her mistake was entirely as to the amount of property she would so realize, which was based on the value of the estate of her husband; she in that case having elected to take under the will. Nor was there, in fact, any mistake as to her antecedent rights under the will; for the Chancellor found that her rights were paramount to those of the creditors of her deceased husband, and held that he would protect those rights by requiring a sum to be taken from the purchase money of the land and held in trust to pay her a sum equal to the annuity given her under the will. It was not necessary, therefore, to allow a revocation. There was no mistake as to her rights. But it is equally clear from the opinion that, if it had been necessary to do so, the Court would have allowed to the widow a retraction of her election, even when the mistake was not as to the character of her rights, but as to the amount of the property which would come to her. It is fair to assume, therefore, that under the facts in the case now before this present Court, Chancellor Saulsbury would have allowed a retraction, and so protected the widow from the consequence of her error.

Where an election is made under a misapprehension of the law as to her right of dower, even although the mistake resulted from the erroneous advice of her counsel, a widow so electing to take the provision made by law in lieu of that made for her under her deceased husband's will may be allowed to retract her election, where no rights of third persons who would be injured by a revocation have intervened. Precedents for the cpplication of even a more liberal rule are frequent, for in many aases a retraction is allowed where the mistake of the person

electing was to the amount of property affected. In *Evans'
Appeal*, 51 *Conn*. 435, a widow for whom provision was made
in her deceased husband's will declined to take it, and claimed
in lieu thereof the dower and other rights to which she was
entitled, and so acted under advice given her by the judge of
the Probate Court as to the extent of her rights independent of
the will. Subsequently she took a proceeding in the Probate
Court to retract her declination of the provisions of the will, on
the ground that she had been incorrectly advised of her rights
of dower and other rights independent of the will. This pro-
ceeding was taken before distribution of the estate. The appel-
late court allowed her to retract. "This may well be regarded
as a case of misapprehension as to rights without fault—as a
mistake from the effects of which a court of equity has power
to grant relief." This case comes within Pomeroy's class of
mistakes of law, to be corrected where no conflicting interests
have intervened. It also comes within the rule as to election
made, not only without full knowledge of her rights, but also
upon mistaken advice as to her rights, received by her from a
source she was entitled to rely on. In *Macknet v. Macknet*, 29
*N. J. Eq*. 54, the widow, under the advice of counsel as to her
rights under the will of her husband and her rights independent
thereof, elected to take the latter, believing that by so doing
she was acquiring a larger amount than she would have received
under the will. It was claimed in opposition to her effort to
retract that her mistake was one of law. The Court treated the
mistake as one of fact, and allowed the retraction, where the
situation had not been so changed since her election that it
could be done without prejudice to the subsequently acquired
rights of others. Application was also made to her case of the
general rule that a person entitled to an election should have,
before doing so, full knowledge of her rights and the amount of
property involved in the election. This case was one of mistake
of law and fact. The election was made under misapprehen-
sion of the character of her rights by reason of errors of her coun-
selors, and also as to the amount of property to which she was
entitled under one of the conditions involved in the choice.
Here, too, there were no rights acquired by others subse-

quently to the choice which would have been injuriously affected thereby.    Other cases to like effect have been cited: *Pratt v. Douglas*, 38 *N. J. Eq.* 516; *Hill v. Hill*, 62 *N. J. Law*, 445, 41 *Atl.* 943; *Woodburn's Estate*, 138 *Pa. St.* 606, 21 *Atl.* 16; *Pusey v. Desbouvrie*, 3 *P. Wms.* 315.

The fundamental idea of an election is that of a designed choice of one thing rather than another, and the selection cannot be made satisfactorily when there is at the time a misconception of the rights between which the choice is made.    This feature makes a line of distinction between mistakes in making elections from other mistakes, and with good reason a more liberal rule prevails in granting equitable relief from the latter than from the former.    This Court, therefore, bases its decision in this case on the absence in this case of one of the necessary elements in a valid election, though good reason might also have existed to base it on the equitable power to correct a mistake as to antecedent existing rights, where no subsequently intervening rights would be injuriously affected by a retraction.

It remains to be considered how a retraction of the election will affect the rights of persons other than the widow, and particularly what would be the consequences of now allowing the widow to take the provision made for her under the will. The executor will not be injuriously affected, because he has not yet rendered an account, or made distribution, or done more than pay a few debts, small in number.    There are no creditors of the deceased.    The beneficiaries in remainder are not to be considered in this connection.    The only suggestion of detriment to any interest liable to occur by reason of a revocation is that the executor and widow joined in a lease of a farm of the testator and that the widow has received part of the rent. But these matters are unimportant.    The lease would still be valid, for the legal estate in the demised premises was devised to the executor, and so the rights of the lessee would not be affected.    The receipt of the rent is denied, and, even if true, is unimportant, because the retraction of her election would be made on terms, so that she would receive no greater advantage than that which the will gave her.    Therefore, the Court

may set aside the election, and so give the widow the benefit of her husband's provision for her, without affecting the rights of any who have intervened since she made her election.

The petitioner will, therefore, be allowed to retract the election heretofore made by her to take the dower or thirds, or other rights to which she was entitled in lieu of the provisions of the will, and be allowed to make another and different election to take the provision made for her under the will of her husband, upon her relinquishing any right under the lease or to the rent, or returning to the executor any rent or other money which she may have received.   All costs of the proceeding will be taxed against the petitioner.

Let a decree be entered accordingly.