596

First National Bank of Stevens Point, Wisconsin, Appellee, v. Village of Stickney, Appellant.

Gen. No. 43,422.

Opinion filed November 16, 1948. Released for publication December 2, 1948.

JOSEPH LUSTFIELD and ODE L. RANKIN, both of Chicago, for appellant.

CHARLES J. MICHAL, of Chicago, for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Plaintiff, First National Bank of Stevens Point, Wisconsin, which is the owner of all the outstanding local improvement bonds issued by the Village of Stickney in anticipation of the collection by it of its special assessments 15 and 16, filed a complaint at law against said village to recover installments of such assessments and interest thereon alleged to have been collected by it and wrongfully withheld from payment of plaintiff's bonds and interest coupons. The defendant village

filed a cross complaint in equity alleging *inter alia* that it had made certain payments to plaintiff which were not properly endorsed on the bonds; that certain credits were due it which plaintiff refused to allow; and that certain bonds and interest coupons were used by plaintiff in payment of assessments in lieu of cash and were therefore cancelled and void. The cross complaint asked the court for instructions as to the manner in which defendant should pay out the funds in its hands which it had collected on special assessments 15 and 16, to state an account between the parties and for general equitable relief. The case was tried before the court without a jury. The court found the issues in favor of plaintiff and entered judgment against the defendant, Village of Stickney, for $51,077.43. A decree was entered at the same time which contained detailed findings upon which the amount of the judgment was predicated. The decree allowed defendant certain credits and found that with the exception of such credits the equities were against the defendant. Defendant appeals from the judgment and the decree.

Plaintiff's complaint at law, filed December 18, 1943, alleged in substance that it was the legal owner of all the outstanding Village of Stickney's local improvement bonds with interest coupons attached, which were issued in anticipation of the collection of its special assessments 15 and 16; that on May 7, 1937, it filed a petition for a writ of mandamus against the Village of Stickney and certain of its officials to compel the payment of moneys due on collections made by said village on account of said special assessments; that on December 20, 1939, a judgment order was entered in the mandamus proceeding, which found that the defendant village had collected up to April 30, 1937, $33,-015.75 on account of special assessment 15 and $20,139.-51 on account of special assessment 16 and that, because of certain payments made by said defendant to plaintiff subsequent to April 30, 1937, out of funds collected by it on account of special assessment 15, the

balance due and owing to plaintiff on its special assessment 15 bonds on April 30, 1937 was $6,629.42; that the mandamus judgment order also found that said amounts of $6,629.42 and $20,139.51 should be paid by the defendant village to plaintiff to be applied on account of the indebtedness due and owing to the latter by virtue of its ownership of all the Village of Stickney's special assessments 15 and 16 bonds and directed that a writ of mandamus issue commanding the defendants to pay plaintiff forthwith $6,629.42 and $20,-139.51 to be applied on account of said bonds respectively; that upon defendants' appeal from such judgment order, it was affirmed by this court and leave to appeal was denied by the Supreme Court; that thereafter a writ of mandamus issued and was served upon the defendants but they failed and refused to comply with same; and that plaintiff was also entitled to recover $14,044.49 in assessments and interest thereon collected by defendant during the period from May 1, 1937 to April 30, 1943, on special assessments 15 and 16, which amount was withheld by the Village of Stickney from payment of plaintiff's bonds and interest coupons.

The complaint prayed for judgment in a sum sufficient to include the aforesaid amounts of $6,629.42 and $20,139.51, which the mandamus judgment order found were collected by the Village of Stickney on account of special assessments 15 and 16 respectively up to April 30, 1937, and were not paid to plaintiff as directed by said judgment order, and in addition thereto $14,044.49 collected by defendant from May 1, 1937 to April 30, 1943, on special assessments 15 and 16 and not paid to plaintiff. The complaint also asked that plaintiff be allowed statutory interest on the foregoing amounts claimed to have been wrongfully withheld by defendant from plaintiff.

The answer of the defendant village, after admitting the facts alleged in plaintiff's complaint in reference to the mandamus proceeding and the judgment order

entered therein and that it collected $14,044.49 in principal and interest on special assessments 15 and 16 during the period from May 1, 1937 to April 30, 1943, which amount it withheld from payment of plaintiff's bonds and interest coupons, averred generally that "many of the said bonds and coupons have been paid, surrendered and cancelled, that the liability of defendant thereon has materially changed since the entry of said order granting said writ" and that "many of said bonds are void and their obligation discharged by payments and transactions between the parties hereto since the entry of said mandamus order."

Defendant's cross complaint in equity contained in part the following allegations:

"2. That prior to the year 1939 the Local Improvement Act contained a provision which permitted any property owner to pay assessments against his property by the surrender of bonds applying them to the installments to which they might relate, the bonds to be taken at par with accrued interest to date of payment and the bond to be surrendered and cancelled. The said section [89] of the statute (Stat. 1937, ch. 24, par. 795) is as follows:

" 'Any property owner may pay his assessment, wholly or in part, with the bonds or vouchers issued under this act on account of such assessment, applying, however, the bonds and vouchers of each series only to the payment of the installments to which they relate. In making such payments, such vouchers and bonds shall be taken at their par value and interest accrued to the date of making such payment. All vouchers and bonds received in payment of such assessment shall be cancelled by the officer receiving same, as of the date of their receipt, and deposited with the treasurer of the said town or village issuing the same.'

"3. That in order to facilitate the collection of money due on its bonds and coupons and stimulate payments of special assessment taxes by the property

owners, the plaintiff entered into an arrangement whereby it deposited in escrow for collection with the First National Bank of Cicero, Illinois, its bonds and coupons due in the said Special Assessments Nos. 15 and 16; and through other agents appointed by plaintiff, it contacted property owners and offered to obtain for them a discount of ten per cent on the total amount of their tax bills if the taxpayer would take his tax bill to the said bank and deposit the same, together with 90% thereof in cash; the arrangement so made further provided that the tax bills so deposited with the said bank, together with some bond or coupon payable out of the particular installment involved, would then be taken by plaintiff's agents to the Village Collector of defendant Village, and the said official would thereupon stamp the tax bill paid and credit the amount of the tax bill as a payment upon the bond or coupon so presented; the arrangement further provided that the agent of the plaintiff would then take the bond so endorsed by the Village official and the tax bill so stamped paid by said official, and return them to the said bank, which would thereupon receive the said bond under the said escrow arrangement and would then remit to the plaintiff the amount of money deposited with the said bank by the said taxpayers, being 90% of the amount due upon the face of said tax bills; and the said First National Bank of Cicero would then return to the taxpayer the bill for his taxes so receipted as paid by the said Village official . . . .

"That by such arrangement no money was paid into or out of the treasury of the said Village of Stickney.

"4. That by the statute hereinabove quoted it was required that when a bond should be so used to pay such an assessment, the bond should be surrendered and cancelled and deposited with the Treasurer of the Village.

"5. That instead of surrendering said bonds, they were retained by the plaintiff; that by using such bonds in payment of assessments in the manner afore-

said, they became void and of no further effect and should have been surrendered up for cancellation at the time and occasion of the first endorsement thereon and are now subject to be cancelled by order of this court.

"6. That notwithstanding said bonds became void when so used, the plaintiff thereafter and again used the same bonds with which to pay other bills of other taxpayers and such later payments were endorsed upon said bonds, without the money represented by such endorsements having been paid to this defendant."

As to this phase of the case the cross complaint prayed that "the court may state an account between plaintiff and defendant in the said special assessment matters and that plaintiff may be required to produce and surrender up for cancellation all of said bonds and coupons so endorsed as aforesaid and used in the payment of installments of said specials, and that they may be marked cancelled by order of court . . . ."

Plaintiff's answer to the foregoing allegations of the cross complaint admitted that it entered into the arrangement with the Village of Stickney set forth in paragraph 3 of the cross complaint whereby said village agreed to permit it to use its bonds and interest coupons in lieu of cash in the payment of installments of special assessments 15 and 16 and interest on such installments and it then alleged that "said arrangement was made under circumstances devoid of fraud or misrepresentation and was made under a misapprehension of the law and was treated as legal and valid by all of the parties hereto and did not affect the obligation of the cross plaintiff on the bonds issued by it and so owned by the cross defendant; that no other parties whatsoever were affected or could be injured or damaged whatsoever, inasmuch as the cross defendant was then, as it is now, the owner of all of the outstanding bonds . . . ."

There is no serious dispute as to the salient facts. Some time prior to July 1, 1930, the Village of Stickney confirmed the making of special assessments 15 and 16 and levied same for the construction of water mains and sewers in said village. Bonds aggregating $39,100 were issued in anticipation of the collection of special assessment 15 and bonds aggregating $72,000 were issued in anticipation of the collection of special assessment 16. All of these bonds were originally issued to J. M. Donahue in payment for his work in constructing the improvements. During the period from August 27, 1930 to December 7, 1930, Donahue was paid $28,000 by the Village of Stickney from funds collected by it on account of both special assessments. Notwithstanding the fact that a large portion of the $28,000 paid to Donahue was collected by the village on account of special assessment 15, it negligently accepted from him for cancellation and retirement twenty-eight $1,000 bonds, all of which were payable out of collections made by defendant on account of special assessment 16.

Thereafter the plaintiff, First National Bank of Stevens Point, Wisconsin, acquired by purchase from Donahue all of the then outstanding bonds issued by the Village of Stickney in anticipation of the collection by it of special assessments 15 and 16, said bonds amounting in the aggregate to $39,100 and $44,000 respectively, as found in the mandamus judgment order.

It must be concluded from the pleadings filed herein that plaintiff is entitled to recover from defendant the amounts set forth in its complaint, namely, $6,629.42, $20,139.51 and $14,044.49, unless the village has established its right to some or all of the relief sought in its cross complaint. The first two of said amounts, as already shown, represent collections made by defendant on account of special assessments 15 and 16 up to April 30, 1937, and found by the mandamus

judgment order to be due and owing to plaintiff in payment of its bonds and interest coupons. The third of said amounts represents collections made by defendant on account of said special assessments from May 1, 1937 to April 30, 1943, and withheld from payment of plaintiff's bonds and interest coupons.

The terms of the arrangement whereby the village of Stickney permitted plaintiff to use its bonds and interest coupons in lieu of cash in paying installments of special assessments 15 and 16 and interest thereon have been fully described in paragraph 3 of the cross complaint and it is unnecessary to repeat them. Pursuant to said arrangement plaintiff partially used in lieu of cash nine $1,000 special assessment 15 bonds to pay installments of said special assessment and it also partially used in lieu of cash nine $1,000 special assessment 16 bonds to pay installments of that special assessment. All nine of the $1,000 special assessment 15 bonds were first used in lieu of cash on September 25, 1939, to pay installments of that special assessment and the payments so made on that date and endorsed on said bonds amounted in the aggregate to $172.30. All nine of the $1,000 special assessment 16 bonds were also first used in lieu of cash on September 25, 1939, to pay installments of that special assessment and the payments so made on that date and endorsed on the bonds amounted in the aggregate to $392.90. The total amount of eight subsequent endorsements of payments of installments of special assessment 15 on the nine $1,000 bonds of that issue, when they were used in lieu of cash to make such payments, was $2,973.30 and, when the nine $1,000 special assessment 16 bonds were used in like manner, eight subsequent endorsements thereon of payments of installments of that assessment amounted in the aggregate to $4,085.39. There is a balance of $5,854.40 of the nine $1,000 special assessment 15 bonds that was not used in lieu of cash in payment of installments of that special

assessment and a balance of $4,521.71 of the nine $1,000 special assessment 16 bonds that was not so used.

Defendant's theory, as we understand it, is that plaintiff's nine $1,000 special assessment 15 bonds should be declared void and canceled, except as to $172.30, which represents the total amount of installments of said special assessment paid by the first use of such bonds in lieu of cash on September 15, 1939, and that the nine $1,000 special assessment 16 bonds should be declared void and canceled, except as to $392.90, which represents the total amount of installments of said special assessment paid by the first use of such bonds in lieu of cash on the same date. In other words, according to defendant, the nine $1,000 special assessment 15 bonds should be declared void and cancelled to the extent of $8,827.70 and the nine $1,000 special assessment 16 bonds should be declared void and cancelled to the extent of $8,607.10. It is defendant's further theory that it should be given credit against the amount found due plaintiff under the mandamus judgment order for all endorsements of payments, except the first, made on the aforesaid eighteen $1,000 bonds. As heretofore shown, the payments so made of installments of both special assessments by said bonds in lieu of cash and endorsed thereon amount to more than $7,000.

Defendant's principal contention is that "the nine bonds in Special 15 and the nine bonds in Special 16 used in payment of assessments in lieu of cash, should be cancelled and surrendered as of the first date of such use as shown by the endorsements on the bonds, to wit: September 25, 1939" and that "the subsequent endorsements should be applied as a credit to the Village in payment of the amount due under the mandamus order."

In support of this contention defendant relies on section 89 of the Local Improvement Act, heretofore set forth in defendant's cross complaint, as it existed

prior to its amendment, effective July 12, 1939, and on *Friedman v. City of Chicago,* 374 Ill. 545.

Section 89 of said act as amended in 1939 was in force when the parties entered into the aforesaid arrangement, whereby the Village of Stickney permitted the use of plaintiff's local improvement bonds in lieu of cash to pay installments of special assessments 15 and 16. Said village approved the method and manner of such use of plaintiff's bonds and actually participated therein. Amended section 89 (ch. 24, par. 795, Ill. Rev. Stat. 1939) provides in part that "when the amount of the assessment is less than that of the bond or voucher either an indorsement shall be made charging such bond or voucher with the amount thereof used in the payment of such assessment and such bond or voucher shall be returned to the person making such payment or the bond or voucher be canceled and a new bond or voucher be issued for the balance due and surrendered to the person making such payment." It will be noted that the foregoing provision of amended section 89 permitted such an arrangement as was made between the parties for the use of plaintiff's local improvement bonds in lieu of cash in paying installments of special assessments 15 and 16.

However, it was held in *Friedman v. City of Chicago,* 374 Ill. 545, decided in October 1940, that amended section 89 did not apply to local improvement bonds issued prior to its enactment and that such a bond issued before section 89 was amended in 1939, used in payment of an installment of a special assessment in lieu of cash, should be cancelled and surrendered as of the first date of such use, even though the bond be larger in amount than the assessment paid by it, as provided in original section 89. It is uncontroverted that neither plaintiff nor the Village of Stickney had any knowledge of the decision in the *Friedman* case until after the aforesaid eighteen bonds were used for the purpose and to the extent already indicated.

The manner in which plaintiff used its nine $1,000 special assessment 15 bonds and its nine $1,000 special assessment 16 bonds in lieu of cash in payment of installments of those special assessments must necessarily be held to have been illegal in the light of the decision in the *Friedman* case. However, it is insisted by plaintiff that whenever, as here, it is clearly shown that the parties in their dealings with each other have acted under a common mistake of law and the party injured thereby can be relieved without injury to others, equity will afford him redress. In other words, equity will not permit a naked legal right to be used as an instrument of injustice and as a means of depriving another of a dominant equitable right.

Defendant suffered no loss by reason of the use of the bonds in the manner indicated but it is merely seeking to unjustly enrich itself by asking to have said bonds cancelled to the extent of $17,434.80 and to further enrich itself by having the payments endorsed on the eighteen bonds, aggregating more than $7,000, when, they were used in lieu of cash to make such payments, applied as a credit to it against the amount found due plaintiff under the mandamus judgment order.

It must be remembered that during the entire time plaintiff was using its bonds in lieu of cash in payment of installments of special assessments 15 and 16, the arrangement under which they were so used was treated as legal and valid by both parties thereto and it did not in any wise affect the obligation of defendant on the bonds issued by it and owned by plaintiff. It must also be remembered that no other parties were affected by such arrangement or could be injured or damaged in any manner because of it, inasmuch as plaintiff was the owner of all the outstanding bonds and every time a bond was used in lieu of cash in payment of installments of either special assessment 15 or 16, said payment was endorsed on such bond and constituted a *pro tanto* cancellation thereof.

In *Peter v. Peter,* 343 Ill. 493, the court said at pp. 498, 499 and 500:

"While it has been stated as a general rule that a mistake of law pure and simple is not adequate ground for relief in equity, yet even when the mistake is one of law equity sometimes intervenes. (*Moore v. Shook,* 276 Ill. 47.) Courts of equity have aided mistaken parties because of the demands of justice. . . .

"The general rule that relief may not be had in equity against mistakes of law has by no means been invariably applied in this country nor in England. Where injustice would be done by its enforcement such injustice has been avoided by declaring that a mistake such as to the title to property or the existence of a certain particular right, though caused by an erroneous idea as to the legal effect of a deed or of duties or obligations created by an agreement, was really a mistake of fact and not strictly one of law and so did not constitute an insuperable bar to relief. . . .

"The important question in cases of this character is not whether the particular mistake was one of law or of fact but whether it was such as a court of equity will correct. (*Dinwiddie v. Self,* 145 Ill. 290; *Park Bros. Co. v. Blodgett & Clapp Co.,* 64 Conn. 28; *Reggio v. Warren* [207 Mass. 525], 93 N. E. 805.) Pomeroy, in his Equity Jurisprudence, vol. 2, 3d ed. sec. 849, formulates a general rule based upon justice and principle and supported by numerous decisions, which simply defines the extent of equity jurisprudence to relieve in cases of mistake. It is as follows: 'Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities or other relation, either of property or contract or personal status, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests or relations or of carrying out such assumed duties or

liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact.' This rule finds support in our own decisions. (*Moore v. Shook,* 276 Ill. 47, and cases cited.) Other courts supporting that rule are *Cooper v. Phipps,* L. R. 2 H. L. 149; *Livingstone v. Murphy* [187 Mass. 315], 72 N. E. 1012; *Benson v. Bunting,* 127 Cal. 532; *Renard v. Clink,* 91 Mich. 1; *Eustis Manf. Co. v. Saco Brick Co.,* 198 Mass. 212; *Rauen v. Prudential Ins. Co.,* 129 Iowa, 725; *Healy v. Healy,* 76, N. H. 504; *In re McFarlin,* 9 Del. Ch. 430; *Jeakins v. Frazier,* 64 Kan. 267.''

In *Peterson v. First Nat. Bank of Ceylon,* 162 Minn. 369, the plaintiff was threatened with a disastrous result by reason of a mistake of law and fact made by his inexperienced attorney in connection with a foreclosure proceeding instituted by him in plaintiff's behalf and the defendants therein sought to secure an unconscionable advantage of plaintiff because of such mistake. In holding in that case that plaintiff was entitled to relief from the unilateral mistake of his attorney, the court, at the conclusion of its exhaustive and well reasoned opinion, said at p. 379:

''The controlling equities of this case are these: (1) A blameless plaintiff fallen into serious error, whether of fact or law is immaterial, which promises a disastrous result, wholly unintended by any of the parties to the transaction wherein the mistake occurred; (2) absence of negligence of the person seeking relief; (3) defendants with knowledge of the mistake attempting to secure by inequitable conduct an unconscionable advantage of plaintiff and to enrich themselves unjustly at his expense; (4) the ability of the court to restore the status quo as to all of the interests involved.''

In the case at bar we have (1) a blameless plaintiff upon which, because of a mutual mistake of law, defendant attempts to impose a disastrous result, wholly unintended by either party to the transaction wherein

the mistake occurred; (2) absence of negligence on the part of plaintiff; (3) a defendant, which treated as legal and valid the arrangement whereby plaintiff's bonds and interest coupons were used in lieu of cash in paying installments of special assessments 15 and 16 and actually participated in such use of said bonds during the entire time they were so used and which, subsequently discovering that both it and plaintiff acted under a misapprehension of law as to the manner in which they agreed the bonds might be used, now seeks to secure an unconscionable advantage of plaintiff and to unjustly enrich itself at the latter's expense; (4) the status quo of defendant requires no restoration, since it suffered absolutely no loss, inasmuch as every time a bond was used by plaintiff in lieu of cash in payment of an installment of either special assessment, such payment was charged against and endorsed upon the bond so used, thereby constituting a pro tanto cancellation thereof.

In our opinion the equitable principles enunciated in the *Peter* and *Peterson* cases are squarely applicable to the situation presented here and defendant has cited no authority to the contrary. We are impelled to hold that there is no merit in defendant's instant contention. We could not hold otherwise without subjecting plaintiff to an unconscionable loss and denying it simple justice.

What we have said concerning defendant's first contention is also applicable to the interest coupons attached to the 18 aforementioned $1,000 bonds, which coupons were used in lieu of cash in payment of interest due on installments of special assessments 15 and 16.

Plaintiff also used eight $100 special assessment 15 bonds and nine $500 special assessment 16 bonds and the interest coupons attached thereto in lieu of cash in payment of installments of said special assessments and interest thereon. All of these bonds and interest coupons were used in full in lieu of cash and were

delivered by plaintiff to defendant for cancellation. What we have said as to the 18 bonds and the interest coupons attached thereto, hereinbefore referred to, is equally applicable to said eight $100 special assessment 15 bonds and nine $500 special assessment 16 bonds and the interest coupons attached thereto.

Defendant next contends that "the account found by the decree should have taken into consideration and allowed credit for the error in the mandamus case." In explanation of this contention it should be stated that defendant claims that certain findings of the master in chancery in the mandamus proceeding, upon which the judgment order entered therein was in part predicated, were erroneous. Defendant's entire argument in support of the instant contention is based solely on the assumption that it has the right to relitigate matters finally determined in said mandamus proceeding. It has no such right. (*Webb v. Gilbert,* 357 Ill. 340; *In re Assessment of Northwestern University,* 206 Ill. 64.)

It is further contended that "the bank was an assignee of the original holder of the bonds in Specials 15 and 16" and that "the entire finding as to the amount due plaintiff in special 16 under the master's theory [in the mandamus proceeding] was wrong." It is argued in defendant's brief in support of this contention that "the contractor who cancelled $28,000 of bonds in Special 16 being then the owner of all of the bonds, the bank being only an assignee of the contractor, had no greater rights than the owner could have, and could not later come in and complain that the payments were not prorated." The identical question presented by this contention was considered and finally determined by the mandamus judgment order and defendant is barred from attempting to again litigate the same matter.

It is urged that the trial court erred in its findings in paragraphs 15, 16, 23 and 24 of the decree. The findings referred to in paragraphs 15 and 16 concern

a credit allowed defendant of $479.47. This credit, according to the evidence, should have been $581.95 and said paragraphs of the decree must be corrected to allow defendant an additional credit of $102.48.

We find no error in the method or manner of the allowance to defendant of a credit of $796.75 in paragraphs 23 and 24 of the decree.

It is undisputed that one $1,000 special assessment 16 bond, bearing the description, Bond 4, Series E, due December 31, 1936, is still in plaintiff's possession uncancelled, although it was paid in full by defendant as to both principal and interest on December 27, 1935. This bond was not mentioned in the decree. The decree should have directed plaintiff to deliver said bond to defendant for cancellation.

Defendant finally contends that the trial court erred in allowing $10,402.01 in interest upon the amounts it found due the plaintiff. In support of this contention defendant makes the following statement in its brief: "It is suggested that the bonds themselves bear interest until paid and the adding of interest to the amounts found due is simply duplicating the liability on the bonds as far as interest is concerned and is demanding the payment of interest before it is collected by the defendant. Under the law as we understand it, the defendant is a trustee of the funds collected from special assessments, both for the taxpayer and the bondholders and can pay only from such moneys as it collects. This interest not having been collected, the defendant should not be asked to pay it now, but the plaintiff must wait until the monies are paid by the taxpayer in the payment of his assessments." This is a specious argument and has no bearing on plaintiff's right to interest on the installments of the special assessments and interest thereon which defendant collected and wrongfully withheld from payment of plaintiff's bonds and interest coupons. Plaintiff predicates its right to interest on the amounts

found due it on section 2 of the Interest Act (par. 2, ch. 74, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 67.02]), which provides in part that creditors shall be allowed to receive interest at the rate of five per cent per annum "on money withheld by an unreasonable and vexatious delay in payment."

*Conway v. City of Chicago*, 237 Ill. 128, disposes of the question of plaintiff's right to be awarded interest on the amounts hereinafter shown to have been collected by defendant and wrongfully withheld from the payment of plaintiff's bonds and interest coupons. In that case the court said at p. 137:

"While appellee's ownership of past due bonds issued in anticipation of this special assessment is a necessary element in his right to recover in this case, still this is not a suit upon the bonds in the sense that the recovery must be according to the tenor and effect of the instruments, but it is essentially a suit against the city for money had and received to the use of appellee which in good conscience ought to be paid to him. The rate of interest, therefore, which appellant is liable for, is that fixed by the statute, and not the contract rate specified in the bonds. Appellee is undoubtedly entitled to the rate mentioned in the bonds as against the special assessments levied or to be levied to pay such bonds, but the general liability of appellant to pay interest does not arise out of the contract, but out of the unlawful withholding of these funds after they were collected by the city. The general rule as to the liability of municipalities is, that they are not liable on their contracts for interest in the absence of an express agreement to pay it, yet where money is wrongfully obtained, or where it is lawfully obtained and unlawfully and wrongfully withheld, the municipality is liable for interest to the same extent as a private person. *(Vider v. City of Chicago,* 164 Ill. 354; *City of Danville v. Danville Water Co.,* 180 id. 235; *City of Chicago v. Northwestern Mutual Life Ins. Co.,* 218 id. 40.)"

The following tabulation in the decree indicates the sums found due plaintiff from defendant on its bonds and interest coupons in special assessments 15 and 16:

| Special Assessment Number | —Period Ended— April 30, 1937 | April 30, 1943 | Total due at April 30, 1943. |
|---|---|---|---|
| 15 | $ 6,629.42 | $ 4,791.82 | $11,421.24 |
| 16 | 20,139.51 | 9,114.67 | 29,254.18 |
| Total | $26,768.93 | $13,906.49 | $40,675.42 |

The following tabulation in the decree shows the computation of interest on said amounts found due the plaintiff:

| Special Assessment Number | —Period Ended— April 30, 1937 | April 30, 1943 | Total interest as herein found computed at 5% to June 30, 1944. |
|---|---|---|---|
| 15 | $ 2,375.31 | $ 279.36 | $ 2,654.67 |
| 16 | 7,215.96 | 531.38 | 7,747.34 |
| Total | $ 9,591.27 | $ 810.74 | $10,402.01 |

In our opinion the trial court properly found that the total amount due plaintiff from defendant was $40,675.42 and that plaintiff was entitled to recover interest thereon of $10,402.01.

Paragraphs 17 and 18 of the decree contain findings which furnished the basis for an adjudication in the ordering portion thereof "that the bonds and interest coupons used in lieu of cash for payment on account of principal of assessment installments and interest thereon and which bear the endorsement of credits, schedules of same appearing at Paragraphs Nos. 17 and 18 of this decree, be, and the same are hereby, vacated, set aside, cancelled, and held for naught, and that the respective items of assessments

paid thereby be, and the same are hereby, ordered restored, reinstated and re-entered on the proper books of the municipality for collection, in the same manner as if they had not been marked 'paid,' and that said bonds and the accrued interest thereon, and interest coupons shall be reissued and restored to their par worth, the same as before making the endorsements now appearing thereon, all in conformity to and with the schedules appearing at Paragraphs Nos. 17 and 18 of this decree.''

The foregoing adjudication and the findings in paragraphs 17 and 18 of the decree refer to the endorsements of payments on the eighteen $1,000 special assessment 15 and 16 bonds and the interest coupons attached thereto, which were made when said bonds and interest coupons were used in lieu of cash to pay installments of said special assessments and interest thereon.

Even a casual reading of said adjudication demonstrates that it is entirely lacking in equity and should not have been incorporated in the decree by plaintiff's counsel or approved by the court. This adjudication and the findings contained in paragraphs 17 and 18 of the decree, upon which it is predicated, must necessarily be reversed.

Since we have heretofore held that it would be inequitable to cancel plaintiff's eighteen $1,000 special assessments 15 and 16 bonds or any portion thereof, because they were partially used in lieu of cash in payment of installments of said special assessments, it was unnecessary that said bonds be restored to their "par worth." Defendant is still obligated to pay the balance due and owing on such bonds, after deducting from the face value thereof the payments endorsed thereon when they were used in lieu of cash in paying installments of the aforesaid special assessments.

For the reasons stated herein the judgment of the superior court of Cook county, entered upon plaintiff's complaint at law and defendant's answer thereto, is

affirmed. Paragraphs 15, 16, 17 and 18 of the decree of said court and the adjudication in the ordering portion thereof, hereinbefore set forth, which is based on the findings contained in paragraphs 17 and 18, are reversed and in all other respects the decree is affirmed. The cause is remanded with directions that paragraphs 15 and 16 of the decree be redrafted to the end that defendant be allowed a credit in said paragraphs of $581.95 instead of $479.47 and that the decree include an order on plaintiff to surrender for cancellation the $1,000 special assessment 16 bond, bearing the description, Bond 4, Series E, due December 31, 1936.

*Judgment affirmed; decree affirmed in part, reversed in part, and cause remanded with directions.*

FRIEND and SCANLAN, JJ., concur.