## Caro Lina Hanson, Appellant, v. Burton Clark et al., Appellees.

### Gen. No. 31,651.

1. FORMER ADJUDICATION—*decision on application of statute to widow's share in husband's estate not concluding right to withdraw renunciation of legacy.* A decision of the Supreme Court to the effect that section 12 of the Dower Act, Cahill's St. ch. 41, ¶ 12, was not applicable to determine the distributive rights of a widow in her husband's estate upon her renunciation of her legacy under his will and election to take her legal share does not conclude her in her subsequent request to the probate court to set aside her renunciation and election.

2. APPEAL AND ERROR—*widow's renunciation of rights under husband's will not voided by decision on her distributive right in his estate.* A decision of the Supreme Court to the effect that section 12 of the Dower Act, Cahill's St. ch. 41, ¶ 12, not applicable to determine the distributive rights of a widow in her husband's estate upon her renunciation of her legacy under his will and election to take her legal share, does not *ipso facto* have the effect of rendering void the renunciation and election.

3. WILLS—*right of widow to withdraw renunciation to take under husband's will.* A widow who, after advice of counsel, has duly filed her renunciation to take under a legacy in her husband's will and elects to take her legal rights is entitled to have the same set aside because

of the fact that she was mistaken and misapprehended the legal rights and effects which would result from such renunciation, no rights of innocent third parties having intervened.

4. EVIDENCE—*presumption of knowledge of law.* Everyone is presumed to know the law, although, like all general rules, there are exceptions.

Appeal by plaintiff from order of distribution entered in the Circuit Court of Cook county on appeal from Probate Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1927. Reversed and remanded. Opinion filed December 12, 1927. Rehearing denied December 27, 1927.

MUSGRAVE, OPPENHEIM, PRICE & McKEEVER, for appellant.

MORSE IVES and CHARLES C. BODENSTAB, for appellees; ROSE & SYMMES, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

The facts in this case are not in dispute. In 1922 Burton Hanson, a resident of Cook county, died testate. His will by its terms provided for the payment of certain specific legacies and for the payment of a legacy to his widow. The residue of the estate was bequeathed to Burton Clark and the residuary legatees. This will was admitted to probate in the probate court of Cook county on October 31, 1922. Burton Hanson left neither child nor any descendant of a child surviving him. At the time of his death he owned no interest in any real estate except an interest in residence property held in joint tenancy with the widow.

On October 31, 1923, his widow, Caro Lina Hanson, filed in the probate court her renunciation of the legacy provided for her by his will and, as the petition for the residuary legatees avers: ''And thereupon she elected to take in lieu thereof her legal share of the estate of said Burton Hanson, deceased, and then

claimed that share to be one-half of all the real and personal estate that shall remain after the payment of all just debts and claims against the estate of said Burton Hanson, deceased.''

A partial distribution had theretofore been made by agreement, the parties to the controversy reserving their rights in the matter. The petition averred that upon her renunciation Mrs. Hanson became entitled to only one-third of the property of the decedent and asked that a further partial distribution be made upon that basis. The widow answered admitting the filing of her renunciation and election to take one-half of all the real and personal estate that should remain after the payment of the debts and claims, and denying that upon her renunciation she became entitled to only one-third of the property of the estate. The executor having also answered, the matter was heard by the probate court and an order entered finding that the widow was entitled to take one-half, and later, upon appeal by the residuary legatees to the circuit court, a similar order was entered. The probate and circuit courts held that section 12 of the Dower Act (Cahill's St. ch. 41, ¶ 12; Smith-Hurd's Ill. Rev. St. 1919, p. 1122, ch. 41) was applicable, and that under its provisions the widow was entitled to one-half of the estate. The residuary legatees appealed to the Supreme Court (*Clark v. Hanson*, 320 Ill. 480), and that court held that said section 12 was not applicable, reversed the judgment and remanded the cause ''for such other and further proceedings as to law and justice shall appertain.'' The cause was reinstated in the circuit court on July 7, 1926, and again came on for hearing, at which time counsel for the widow contended that since section 12 of the Dower Act had been held to have no application to the estate of the decedent, the renunciation made thereunder became a nullity, and that the widow was entitled to take the provision made for her in the will of the decedent.

It was on the other hand contended, and the contention is urged here, that the widow is entitled to receive only one-third of the personal estate after the payment of all debts as provided in section 10, Cahill's St. ch. 41, ¶ 10, of said act with reference to dower. No additional evidence was presented upon this second hearing, and the transcript of the proceedings shows only certain excerpts from the argument of counsel and remarks by the court. In the course of the hearing counsel for the widow moved that the hearing should be suspended until they could appear before the probate court and obtain leave to withdraw her renunciation. This motion was denied. The court was requested by the widow to hold as a proposition of law "that the renunciation of Caro Lina Hanson, widow, filed in the Probate Court became inoperative, null and void upon the finding by the Supreme Court that Section 12 of Chapter 41 of the Revised Statutes of Illinois was not applicable to an estate of a decedent leaving no real estate." The court refused to so hold. Appellant also requested the court to hold as a proposition of law "that the widow, Caro Lina Hanson, is entitled to have and receive the property, legacies and benefits provided for her in the terms of the will of the decedent Burton Hanson." This proposition was also refused. The court thereupon entered an order of distribution which, in part, was as follows:

"The Court further finds that on October 31, 1923, said Caro Lina Hanson, widow of said decedent, filed in the office of the Clerk of the Probate Court her proper written renunciation and election, in and by which she renounced and quit-claimed any devise or other provision made to her by the last will and testament of said decedent, and elected to take in lieu thereof her legal share of the estate of said decedent; that said renunciation and election were entered by the Clerk of the Probate Court at large upon the records of the Probate Court and that said renunciation

and election are good and sufficient in law; that said decedent died testate, leaving no child or descendants of a child him surviving, and at his death owned no real estate or any interest therein, and that upon the filing of said renunciation and election the said Caro Lina Hanson became and now is entitled to receive absolutely and in her own right one-third of all the estate of said decedent in the hands of said Executor which shall remain after the payment of all just debts and the expenses of administration of said estate.''

The order further provided for distribution in conformity with these views. The widow thereby receives $18,000 less than she would take under the will, and she appeals.

It is urged by the residuary legatees that the decision in *Clark v. Hanson, supra,* is controlling, and that the necessary effect of that decision is that the widow here was entitled to take only one-third of the estate. On the other hand, the widow contends that neither in its opinion nor in its order of remandment did the Supreme Court make any finding to that effect nor pass upon the question of whether the widow was finally concluded by her renunciation. It is further contended in her behalf that the renunciation was filed by her under mistake of her legal rights, from which the court, exercising its equitable power, will grant relief; and that, at any rate, the trial court erred in refusing to grant her application for leave to withdraw her renunciation or allow her motion for a continuance to permit application to be made to the probate court to that end.

We are not convinced that the questions arising upon this record may be regarded as settled by the opinion of the Supreme Court upon the former appeal. The question there decided was whether the widow, having renounced, could take distribution according to the provisions of section 12 of the Dower Act, Cahill's St. ch. 41, ¶ 12, and that question is answered in the nega-

tive by the court. The residuary legatees there urged that section 12 was unconstitutional. The court held that it was not applicable, but it in no way decided, nor was it necessary to a decision in that case, nor perhaps under the pleadings was it possible for the court to determine, whether the effect of such decision would be to render her renunciation void or entitle her to the opportunity of having it set aside as being made on account of a mistake and misapprehension of her legal rights. We think the questions arising upon this record have not been decided by the Supreme Court.

In the next place, we think it is clear that the decision of the Supreme Court to the effect that section 12 of the Dower Act was not applicable would not *ipso facto* have the effect of rendering the renunciation and election theretofore filed void. The renunciation was filed within the time provided by the statute and was the voluntary act of the widow, taken after due advice by counsel, and we think that renunciation and election would stand until such time, if ever, as she might ask, upon some proper ground, that it should be set aside.

The controlling question in this case therefore is whether a widow who, after advice of counsel, has duly filed her renunciation to take under her husband's will is entitled to have the same set aside because of the fact that she was mistaken and misapprehended the legal rights and effects which would result from such renunciation, no rights of innocent third parties having in the meantime intervened. The precise question, so far as we are aware and so far as the briefs disclose, has never been decided in this State. There is a wealth of authority of this and other jurisdictions upon the closely related questions of what is or what is not a mistake of fact, what is and what is not a mistake of law, and for what mistakes courts of equity or of law will grant either affirmative or negative relief.

The ancient and fundamental principle is that every one is presumed to know the law. *Ignorantia juris non excusat* is the language in which the principle is stated in the Roman law, although that law recognized some exceptions to the rule. Even slight reflection discloses that this fundamental principle must lie at the basis of any science of jurisprudence. Like all general rules however, it has its exceptions.

Thus in *Lansdowne v. Lansdowne*, 2 Jacob & Walker's Rep. 205, Mosley 364, it appeared that one Mary Lansdowne having four sons, Richard, John, Thomas and William, by settlement gave to each of them a part of her real estate after her death. John and Thomas having died without issue and intestate, the question arose between the son of Richard and his Uncle William as to the right of succession to Thomas. They consulted one Hughes, not a lawyer, who advised that the Uncle William was the heir at law of the deceased Thomas. Plaintiff having filed his bill against Hughes and William, Hughes admitted his mistake, saying that he had been misled through consulting a book called the ''Clerk's Remembrancer,'' and this appearing to be the fact, the court granted the relief asked for in the bill and ordered that certain indentures made under this misapprehension of the law should be delivered up and canceled.

In *Cooper v. Phibbs*, L. R., 2 H. L. 149, the court held that a complainant taking a lease of a certain fishery, of which legally, through an act of Parliament, he was the actual owner, was entitled to be relieved from that mistake, Lord Westbury stating:

''It is said, *'Ignorantia juris haud excusat;'* but in that maxim the word *'jus'* is used in the sense of denoting general law, the ordinary law of the country. But when the word *'jus'* is used in the sense of denoting a private right, that maxim has no application. Private right of ownership is a matter of fact; it may be also the result of matter of law; but if parties

contract under a mutual mistake and misapprehension as to their relative and respective rights, the result is that that agreement is liable to be set aside, as having proceeded upon a common mistake.''

The author of Pomeroy's Equity Jurisprudence (see 4th Ed. vol. 2, § 849, p. 1734), after reviewing the cases in the different jurisdictions, lays down this general rule:

''Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property, or contract, or personal status, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact.''

Coming somewhat closer to the precise question, Story's Equity Jurisprudence, vol. 1, § 172, p. 160, says:

''*Election under will may be withdrawn when entered into through mistake of legal rights.*—A widow who acted under the erroneous impression that she was entitled to half of the real estate left by her husband, whereas in fact she was entitled to dower in only one-third, and she was induced to give up other rights while acting under this belief, will be allowed to withdraw her election upon the real facts being made known to her as to what property she would legally take. There are two principles involved in this case, one as to mistakes of law, and the other as to the requisite of a valid election. Here the widow not only acted respecting her rights in and to the property of her deceased husband under a mistake of law, but she also exercised her right to elect certain rights

therein in preference to other rights therein while under the same misapprehension of her rights. It also appears that not only was she mistaken as to the character of her rights independent of her husband's will, but she was also mistaken as to the amount of property she would receive under the several rights between which she made her choice when she made her election. It is a general rule that a mistake of law pure and simple is not adequate ground for relief. But there are well defined exceptions to this rule. A mistake by a party as to his antecedent existing legal right, as distinguished from a mistake as to the legal import of the act done, is one which should be and is recognized as a ground for equitable relief from the consequences of such mistake, where the mistake can be rectified without injury to others." *Lansdowne v. Lansdowne, supra; Cooper v. Phibbs,* and *In re McFarlin,* 9 Del. Ch. 430, 75 Atl. 281, are cited as authorities for this statement of the law.

*In re McFarlin, supra,* was a case which arose in the State of Delaware. Pursuant to the provisions of the statute of that State, a widow appeared in the orphans' court and elected to take her dower in lieu of the provision made for her in the will, which barred such dower. Her election was duly recorded. It was made to appear that at the time of her election she believed, upon advice of counsel, that upon renouncing (her husband having left no children him surviving) she would be entitled to hold one-half of the real estate for life and entitled absolutely to one-half of the residue of the personal estate. These essential facts were not denied, but the executor and trustee under the will claimed that her mistake was one of law and not of fact. The opinion of the court in substance states that two principles were involved in the case—one as to a mistake of law, and the other as to the requisites of a valid election; that the widow had acted respecting her rights, not only under

a mistake of law but also exercised her right to choose certain rights in preference to others, while under a misapprehension; that she was mistaken as to the character of her rights independent of her husband's will, and was also mistaken as to the amount of property she would receive under the several rights between which she made her choice. The court said:

"It seems that a mistake by a party as to his antecedent existing legal right, as distinguished from a mistake as to the legal import of the act done, is one which should be and is recognized as a ground for equitable relief from the consequences of such mistake, where the mistake can be rectified without injury to the rights of others."

In addition to the authorities which we have already cited the court there cites *Reynell v. Sprye,* 8 Hare 222; *Blakeman v. Blakeman,* 39 Conn. 320; and the court laid down the general rule:

"Where an election is made under a misapprehension of the law as to her right of dower, even although the mistake resulted from the erroneous advice of her counsel, a widow so electing to take the provision made by law in lieu of that made for her under her deceased husband's will may be allowed to retract her election, where no rights of third persons who would be injured by a revocation have intervened."

In *Macknet v. Macknet,* 29 N. J. Eq. 54, it appeared that Macknet died leaving a will containing certain provisions for his wife, which the will expressly stated were to be in lieu and satisfaction of her right of dower, and all other interests which she might have in his estate, her acceptance of the provisions to be determined by a relinquishment by her in writing of such dower and interest within three months after his decease. The widow, within the time limited, filed her dissent and refused to accept the provisions made for her by the will in lieu of dower, and dower was subsequently assigned to her. Afterwards the execu-

tors filed a bill for a judicial construction of the will, and the final decree in that case adjudged that the widow was entitled to receive all the income from the share of her daughter who was then 10 years of age. The daughter then filed her petition setting up that the annual income from her share amounted to not less than $10,000 and prayed that a reasonable allowance out of the same for her fair support, maintenance and education should be made. She also asked that the court might determine whether the surplus or residue of the income, after deducting such allowance, belonged to her or to her mother, and whether, if the surplus was the property of the mother, the executors were bound to pay it over to her. Upon this petition a decree was entered directing that the entire income of the minor should be paid over to the widow and mother during the child's minority. An appeal was taken and this decree was reversed, the court holding that Mrs. Macknet, under the operation of a certain provision of the will, was not entitled to the surplus of the income of her daughter's share over the amount necessary for the support, maintenance and education of the minor. Thereupon the widow filed her bill, praying that she be permitted to withdraw her dissent filed in the surrogate's office and that she might be allowed to accept the provisions of the will in lieu of her dower, *nunc pro tunc;* and that her election might be set aside and annulled on the ground that she was mistaken as to the probable amount of the minor's share, and, also, as to the effect of her election on her right to receive that income. She set up facts showing that this would not in the least interfere with the rights of any person having any interest therein. The defendant's answer to the bill, not denying any of the facts, asserted that the complainant, when she filed her dissent, was under no mistake, except a mere mistake of law, and claimed the benefit of her election. It appeared that the complainant was advised by her

counsel that the right of the full benefit of the provi-
sion which directed the payment to her of the income
of the minor's share would not be taken away by her
refusal to accept the provision made for her in the
will in lieu of dower, and that her counsel also in-
formed her that the executors and their counsel con-
curred with him in his opinion on that subject.  She
testified that had she known her rights or had she
the least suspicion that the minor's share might be
regarded as part of the provision in lieu of dower,
she would not have dissented but would have accepted
the provision made for her by the will.  The proof
also showed that when she made her election she
supposed that the income of the minor's share would
not exceed from $3,000 to $5,000 a year, and that she
therefore considered it prudent not to relinquish her
dower, which would, as she supposed, be productive
of more income than the provision made by the will;
that if she had known that the income of the minor's
share would have amounted to about $10,000 she would
have accepted the provision of the will without hesi-
tation.  The answer denied that the executors or their
counsel expressed the opinion at any time that the
provision as alleged was not one of those intended in
lieu of dower, but one of the executors testified that on
the hearing of the suit for construction of the will,
their counsel "held that Mrs. Macknet took Hattie's
share, without being liable to account for it."  The
court said that it appeared that the complainant had
been informed that the counsel of the executors had
concurred; that it further appeared that neither the
executors nor their counsel, at any time before she filed
her dissent, stated to her that she would forfeit, by
dissent, her right to the surplus of her daughter's
income, or even suggested the existence of a doubt on
the subject; that she had a right to know the probable
consequences of her dissent, and if she discovered her
error while as yet there was time to retract the dis-

sent, and made speedy application for leave to do so, she ought to be placed *in statu quo,* unless the situation had so changed since her election that it could not be done without prejudice to the subsequently acquired rights of others. *Rumbold v. Rumbold,* 3 Ves. 65, *Wake v. Wake,* 1 Ves. 335, were cited. The defendants insisted that the complainant sought to be relieved from a mere mistake of law on her part, but the court said: "Though mistake in matter of law cannot, in general, be admitted as a ground of relief in equity, the rule has its exceptions." The court cites with approval Kerr on Fraud and Mistake, 398; *Hunt v. Rhodes,* 1 Pet. (U. S.) 1.

In *Evans' Appeal* from probate, 51 Conn. 435, it appeared that one Evans died testate on or about September 1, 1882, without issue, leaving his wife him surviving. His will directed that after the payment of his debts the residue of his estate should go to his wife, Ann Evans, "for her sole use and benefit as long as she lives." She was also named as executrix. On September 25, 1882, she gave a written notice to the probate court that she declined to accept the provisions of the will and claimed in lieu thereof dower and all other rights to which by law she was entitled. On March 19, 1883, she gave written notice to the court that she claimed under the will and under the statute of distribution the use of the entire estate, real and personal, for life, and one-half of the personal estate absolutely. She requested the court to so decree. Her petition was denied. Upon appeal the decree was reversed, the court stating:

"We think that the petition for leave to withdraw was properly addressed to that court, and should have been heard and granted by it. For the declination was the act of a woman who, having reason for believing that she had been fully and correctly advised by a competent person as to her rights, yet remained to a certain extent in ignorance. Without negligence she

fell into an error, and before any order of distribution had been made she asked leave to withdraw her declination. This may well be regarded as a case of misapprehension as to rights without fault; as a mistake from the effects of which a court of equity has power to grant relief.''

In *In re Osborn's Estate,* 99 Kan. 227, 161 Pac. 601, it appeared that Osborn died testate January 21, 1914. Six days later his widow made an election of record to take under his will. On March 9, 1914, she filed an application to have the election set aside because made under a misapprehension of her rights under the will, brought about through her not having been sufficiently advised. Her application was denied and she appealed. The statute of Kansas required that the election (save in exceptional cases) should be made personally in court and after an explanation of the legal effect of what was to be done. The court found on the facts that the widow was not informed as to her rights under the will and under the law, and that the probate court did not explain to her the effect of the will. The evidence is recited in detail in the opinion. The trial court was reversed and it was held that no election had been made.

In the appeal of *McMannis, In re Woodburn's Estate,* 138 Pa. 606, 21 Atl. 16, the Supreme Court of Pennsylvania had occasion to consider a case in which Woodburn, the decedent, by the terms of his will gave to his widow the use of one-third of his estate and to his children the use of the other two-thirds during her life. The widow declared her election to take under the will by writing signed, sealed and filed in the registrar's office, and she received money on this basis. During the audit she notified the auditor of her refusal so to take as she had changed her mind. The auditor found that the widow signed the paper electing to take under the will in ignorance of her rights; that in doing so she was ignorantly assenting to what she did not

comprehend; that the executors, shortly before the
testator's death called upon the widow, showing her
acceptance of the terms of the will but made no ex-
planation of her rights under the will or under the
law. The executors at that time believed that she
took the same one-third under the will that she was
entitled to under the intestate law. There was no
claim that the widow had been intentionally deceived
or misled, yet the fact was that she signed the paper
in ignorance of her rights. The court said:

"The authorities are clear that nothing less than
unequivocal acts will prove an election, and they must
be done with a knowledge of the party's rights, as
well as of the circumstances of the case. Nothing less
than an act intelligently done will be sufficient. She
should know, and, if she does not, she should be in-
formed, of the relative values of the properties be-
tween which she was empowered to choose. In other
words, her election must be made with a full knowledge
of the facts. The rule applies with especial force
where the widow is called upon, as in this case, to
make her election shortly after the husband's death.
*Anderson's Appeal,* 36 Pa. St. 476, 492; *Cox v. Rogers,*
77 Pa. St. 160, 167; *Bierer's Appeal,* 92 Pa. St. 265,
266.''

These cases have been cited in the brief of the ap-
pellant. The brief of appellees does not attempt to
distinguish them, and several of the cases we think
cannot be distinguished from the present case upon
any material fact. The precise question, as we have
already said, has never been passed upon by the Su-
preme Court of this State, but in *Dinwiddie v. Self,*
145 Ill. 290 and *Moore v. Shook,* 276 Ill. 47, the Su-
preme Court of this State has approved of the rule
that there are mistakes of law which are analogous to
mistakes of fact, and held that in such cases relief will
be given.

The record before us discloses that no rights of third persons have here intervened; that the widow was well advised as to her rights; that no fraud or misrepresentation of any kind entered into her election; that she was not in any respect negligent; that she made a choice or an election which clearly must have been the result of misapprehension on her part, not alone of law but of the result which would in fact be brought about by the choice. The rights of widows and orphans are favorites of the law. The ruling of the trial court means the widow will be deprived of $18,000 which her husband desired she should have and that it will be distributed to others whom he did not intend should have it.

We think the court erred in entering the order and in denying the motion to continue the hearing on distribution until such time as the widow might present her request to the probate court to have her renunciation and election set aside. For this error the judgment is reversed, and the cause remanded.

*Reversed and remanded.*

O'CONNOR and McSURELY, JJ., concur.