(No. 31794.

IN RE ESTATE OF IRENE CONLEY DONOVAN.—(MICHAEL F. DONOVAN, Appellant, *vs.* WILLIAM E. NEWMAN *et al.,* Appellees.)

*Opinion filed March 22, 1951—Rehearing denied May 21, 1951.*

I. H. STREEPER, III, and HAROLD G. TALLEY, (HAROLD R. CLARK, of counsel,) all of Alton, for appellant.

C. W. BURTON, of Edwardsville, for appellees.

* Mr. JUSTICE WILSON delivered the opinion of the court:

Irene Conley Donovan, a resident of the city of Alton, in Madison County, died testate on November 16, 1945. She left surviving her husband, Michael F. Donovan, and several nephews and nieces, including William E. Newman and Margaret McClintock. By her last will and testament, dated March 6, 1945, the testatrix devised to her executors property described as her home real estate, in Alton, in trust, with directions to the executors, as trustees, to sell this property within one year after her death for such price and upon such terms as they might deem reasonable, and to divide the proceeds of the sale equally between her husband and Margaret McClintock. All the rest of the real estate was devised to Donovan. Testatrix bequeathed the household furniture, equipment, other furnishings and personal chattels in her home to her niece and to her husband, provided, however, that the niece should first choose and take such articles as she might desire, the remainder to go to the husband. All cash on hand and the amounts in savings or checking accounts in banks at the death of the testatrix were bequeathed to her husband. Irene Donovan owned 1000 shares of Obear-Nester Glass Company stock at the time of her death. By her will, she bequeathed one fourth of these shares to her husband for life and, at his death, to her niece, Margaret McClintock. The will provided, further, that, during Donovan's lifetime, these shares should be held in the name of the executors and the net income paid by them to Donovan. One fourth of the shares was bequeathed absolutely to Margaret McClintock, one fourth to William Newman, and one fourth to William Conley, an adopted son of testatrix's parents. The testatrix devised and bequeathed the residue of her estate to Margaret McClintock. Donovan, Newman and Mrs. McClintock were named coexecutors of the will, which directed

---

* This opinion was prepared by the late Mr. Justice Wilson and has been adopted and filed as the opinion of the court.

that they not be required to furnish bond as executors, and that, in the event any of the three persons named failed to act as coexecutor for any reason, the ones acting should have full power to execute the will, including the power to sell the home real estate.

Irene Donovan's will was admitted to probate in the probate court of Madison County on January 16, 1946. On the same day, Donovan, Newman and Mrs. McClintock were appointed coexecutors and, on March 13, 1946, filed their respective oaths. On May 3, 1946, the executors filed an inventory and proceeded to administer the estate. On May 23, 1946, Donovan filed in the office of the clerk of the probate court his renunciation of his wife's will. The renunciation reads: "And now comes Michael F. Donovan, surviving husband of Irene Conley Donovan, and renounces the Will of Irene Conley Donovan, disclaims any share thereunder and by this renunciation elects to take the portion of the Estate of Irene Conley Donovan he would have taken had she died intestate."

On November 9, 1946, the three executors, by their executors' deed under power of will, conveyed the home real estate, in Alton, to James J. Fingleton, his wife, and three others for $14,500. On May 3, 1947, two of the executors, Newman and Margaret McClintock, filed a partial report without accounting, covering the period from March 13, 1946, to May 1, 1947. The report alleged that, since the filing of his renunciation, Donovan had continued to act as executor under his wife's will and continuously exercised all of the powers of an executor with the other two executors, disposed of real estate devised to himself, Margaret McClintock and Newman, as executors with power of sale, acting jointly with the other executors, and had, "by his actions and doings as such executor and trustee, revoked or waived any rights claimed under the said purported renunciation of the will of Irene Conley Donovan." Newman and Margaret McClintock asked the court

to declare that Donovan's renunciation had been released, abandoned, waived or revoked by him, and to authorize them, together with Donovan, to proceed to execute the will of Irene Conley Donovan, as provided therein, and to make a final report and accounting of their acts as executors.

On July 18, 1947, Donovan interposed his objections to the partial report without accounting, specifically denying the allegations relative to the waiver of his renunciation of his wife's will and denying that the coexecutors were entitled to the relief sought. By his objections, Donovan averred that his renunciation was effective as of the date it was filed in the office of the clerk of the probate court of Madison County in accordance with the law and that, having renounced the provisions of his wife's will for himself, and having elected to take his share of the estate in accordance with the laws of the State of Illinois, no act of himself, as one of the coexecutors, had increased or diminished any right, title or interest he had in the estate. He asked that the coexecutors be ordered to distribute to him his share of his wife's estate in accordance with his renunciation, as provided by law. Evidence was heard, briefs were filed, and, on May 13, 1949, the probate court entered an order sustaining Donovan's objections to, and setting aside, the partial report. Newman and Margaret McClintock appealed to the circuit court of Madison County where the cause was heard *de novo*.

The circuit court appointed an administrator *pendente lite* to represent the estate of Irene Donovan as its legal representative. Evidence was heard and, on June 26, 1950, an order was entered approving the partial report of Newman and Margaret McClintock. The decree, to the extent relevant, found that Donovan's renunciation filed on May 23, 1946, was not recorded by the clerk of the probate court nor was the attention of the court directed to it, and that the coexecutors knew nothing of its existence or of its filing, but that, on July 14, 1946, it was, for the first time,

brought to the attention of the probate judge who, on the day named, made a notation, "Note filing," on the instrument; that, after the filing of the renunciation, a conference was held at the home place at which the three executors, the attorney for the estate, and the probate judge, Hon. Anthony W. Daly, were present; that Judge Daly explained to Donovan he had prepared an irrevocable trust agreement for Irene Donovan under date of July 12, 1945, and had also prepared her will; that she had chosen to sign the will rather than the trust agreement, and stated that, in his opinion, there was a strong moral obligation on Donovan to not insist upon his renunciation and to abide by the will; that Donovan, on this occasion, and on another unnamed occasion, agreed he would give consideration to Judge Daly's advice and counsel; that the home real estate was sold and conveyed, as previously described; that, on November 12, 1946, Donovan, together with the coexecutors, prepared, signed and filed a supplementary inventory in the estate; that, together with the coexecutors, he prepared and filed a Federal estate income tax return for the year 1947-1948; that a United States fiduciary income tax return for the year 1945 was signed and filed by Donovan and the coexecutors; that the three executors prepared and filed an estate tax return in which Donovan claimed and was allowed $2000, as his proportionate executor's commission of a total sum of $6000 requested and allowed in the return; that Donovan took many items of personal property from the home place, pursuant to the terms of the will; that, acting as coexecutor, a list of articles taken by him had been inventoried as assets of his wife's estate, and that he had signed dividend checks and instruments as a coexecutor. The court found, further, that Donovan was still active in the handling of any business where any signatures were necessary for the administration of the estate under the will, and, finally, that, after filing his renunciation, Donovan continued to act as coexecutor, accepted bene-

fits, and claimed a fee in this capacity, executed and verified reports as coexecutor, and that these acts constituted an abandonment of his renunciation and an election to abide by the will. The decree found the partial report of Newman and Margaret McClintock, so far as pertinent here, correct and ordered that it be approved; overruled and denied Donovan's objections; set aside the order of the probate court sustaining his objections, and set aside his renunciation, adjudging that he had abandoned, waived and released it and was estopped to assert its validity. Donovan prosecutes an appeal, seeking a reversal of the decree of June 26, 1950. A freehold is necessarily involved.

The controlling issue presented for decision is whether the acts of Donovan subsequent to the filing of his renunciation of the will of Irene Conley Donovan constituted an abandonment, waiver and equitable estoppel to deny the validity and effectiveness of the will as to him. Stated somewhat differently, the question is whether Donovan, by his continued official acts as coexecutor, waived and abandoned his personal renunciation of the will, thereby estopping himself to deny its validity and effectiveness as to him personally.

The nature and effect of Donovan's renunciation requires consideration. Section 17 of the Probate Act declares that, "In order to renounce a will the testator's surviving spouse shall file at the time and place provided for herein a written instrument signed by the surviving spouse and declaring the renunciation. The time of filing the instrument shall be as follows: (a) within ten months after the admission of the will to probate * * *. The place of filing the instrument shall be in the probate court in which the will was admitted to probate. The filing of the instrument is a complete bar to any claim of the surviving spouse under the will." (Ill. Rev. Stat. 1949, chap. 3, par. 169.) Section 16 provides that, when a will is renounced by the testator's surviving spouse in the manner provided in sec-

tion 17, irrespective of whether the will contains any provisions for the benefit of the surviving spouse, he is entitled to receive as his share of the testator's estate after payment of all just claims, as in the present case where the testator leaves no descendant, one half of the personal estate and one half of each parcel of real estate of which the testator died seized and in which the surviving spouse does not perfect his right to dower, conformably to section 19. The purpose of sections 16 and 17 creating the right of a spouse to renounce the provisions of the will and setting forth the method for accomplishing renunciation is to enable a spouse to elect which method of taking would be most advantageous to him or her. Renunciation is a rejection of the provisions of the will made for the spouse, and, in effect, they are obliterated from the will. (*Golden* v. *Golden,* 393 Ill. 536; *Sueske* v. *Schofield,* 376 Ill. 431.) The remaining provisions of the will are not destroyed but remain operative upon the property not included within the statutory share of the spouse. (*Sueske* v. *Schofield,* 376 Ill. 431; *McGee* v. *Vandeventer,* 326 Ill. 425.) The rights of a surviving spouse who clearly renounces provisions of a will made in his or her behalf become fixed by the statute and are not affected by claiming or omitting to claim any specific estate upon renunciation. (*Davis* v. *Mather,* 309 Ill. 284; *Gullett* v. *Farley,* 164 Ill. 566.) Donovan did not perfect his right to dower and, under his unequivocal renunciation, if it has remained effective, is entitled to one half of the personal property and to one half of each parcel of real estate owned by his late wife.

The earlier statutory provision relative to renunciation provided a suggested form to be filed in the office of the clerk of the county court and entered by him at large upon the records of the court. The renunciation, the former statute ordained, "shall operate as a complete bar to any claim which such survivor may afterwards set up to any jointure, devise, testamentary provision or dower thus re-

nounced." (Ill. Rev. Stat. 1937, chap. 41, par. 13.) Construing the former provision, this court observed: "The statute authorizing the renunciation of the provisions of a will * * * requires only that the renunciation shall be filed. It is not required to be approved by the court." (*Sippel* v. *Wolff*, 333 Ill. 284.) Donovan's renunciation was filed in the office of the clerk of the probate court of Madison County on May 23, 1946. The statute commands nothing more. In other words, approval of the renunciation or of its filing is not required. This being so, the testimony of Judge Daly with respect to his notation of the filing of the renunciation on July 14, 1946, and the findings of the decree of the circuit court in this respect are both superfluous and immaterial. Upon the filing of a renunciation, it passes completely out of the control of the party filing it, and cannot be subsequently withdrawn without an order of court. (*Coles* v. *Terrell*, 162 Ill. 167; *Hanson* v. *Clark*, 246 Ill. App. 496.) A renunciation may be retracted by the surviving spouse filing the renunciation where he or she was mistaken and misapprehended his or her legal rights and the legal effect of the renunciation, no rights of innocent third parties having intervened. (*Hanson* v. *Clark*, 246 Ill. App. 496.) Donovan, the surviving spouse, does not seek to have the renunciation set aside. Conversely, a formal renunciation of a spouse's will, made and recorded as required by statute, may not be recalled or set aside even within the time allowed for making an original election, except by leave of a court of equity upon good reason shown. (14 Am. Jur., Dower, p. 761; 81 A.L.R. 746.) Here, the probate court of Madison County had jurisdiction of the controversy arising out of Donovan's renunciation of the provisions of his wife's will. *Kerner* v. *Peterson*, 368 Ill. 59; *Davis* v. *Mather*, 309 Ill. 284.

The command of the statute is explicit, namely, that the filing of the instrument of renunciation is a complete bar to any claim of the surviving spouse under the will re-

nounced. In the present case, Donovan could not have avoided the legal consequences of his renunciation had he so desired without an order of court. Donovan's renunciation states that he "renounces the will of Irene Conley Donovan" and "disclaims any share thereunder." If section 17 of the Probate Act means anything, it means that, upon a surviving spouse's election to take the portion of the estate he would have taken had the spouse died intestate, he is forever barred from claiming or taking under the will which he renounces. The plain meaning of the statute is not to be frittered away under the guise of construction and interpretation.

Authorities presenting parallel factual situations are lacking. In *Pace* v. *Pace*, 271 Ill. 114, a widow accepted her appointment as executrix of her deceased husband's will without bond, commenced the undertaking of carrying the will into execution, and, thereafter, renounced the will. This court said: "Merely performing the duties of an executrix does not prove an election or definite choice to take what is given by the will and surrender the right to take the share of the estate allowed by law. The view that a widow, by accepting an appointment as executrix of her deceased husband's will, not only admits the validity of the instrument as a will but gives her approval to each of its provisions and forfeits her right to choose between the provision made for her by the will or by the law seems to us more sentimental than real. The fact that the widow in this case was not required to give a bond does not aid in creating any estoppel against her, and we have not discovered any principle of estoppel that would apply." In the *Pace case,* the acts of the widow constituting the alleged estoppel occurred prior to the renunciation. Here, nearly all, if not all, the acts claimed to constitute a waiver or abandonment occurred after Donovan's renunciation.

In *Schaffenacker* v. *Beil,* 320 Ill. 31, an acceptance of rent by the widow, it was held, did not constitute a binding

election to take under the will for the reason it was not shown that she received the rent as a life tenant, the court saying, "Under the evidence the acceptance of the rent by her may as well be deemed an acceptance of the rent under her renunciation and election, as by such renunciation and election she was entitled to one-half of the rents of all the rented premises and in addition thereto one-half of all personal property after the payment of debts and her award. The burden of proof that the widow accepted the rents under the provisions of the will is upon appellants, and they have failed by their proof to establish that fact." Similarly, in *Stone* v. *Vandermark*, 146 Ill. 312, a testator's will had been admitted to probate but letters testamentary had never issued. Under these circumstances, the widow, in taking possession of her husband's personal property, and occupying the homestead farm, and receiving the rents and profits, this court decided, had not elected to take under the will. The court said, "As to the personal property, if it had been appraised, as required by statute, and her specific allowance fixed, as required, she would have been entitled to the most, if not all, of the personal property on her specific allowance. As to the possession of the farm, at the time of the testator's death it was his residence and homestead. * * * There is * * * as much reason for holding that the occupancy and use of the farm was as widow, as there is for holding that appellant occupied as devisee."

*Canavan* v. *McNulty*, 328 Ill. 388, is somewhat anal-. ogous. Thomas Canavan died testate, leaving a widow and collateral heirs-at-law. His widow renounced the will one day before the expiration of the time permitted. She then brought a partition suit. The executor urged that the widow was estopped from renouncing the will and taking under the statute because she had accepted the will, consented to the sale of some hay and hogs belonging to the estate for $546.85, had accepted and retained the money,

and had agreed to the renting of certain real estate. Affirming the decree of partition, this court said: " 'Estoppels are odious' and will never be established by uncertain or merely suspicious circumstances. * * * The alleged conduct injured no one entitled to complain and therefore did not estop her." In the present case, Donovan's conduct has injured no one entitled to complain.

In *Kerner* v. *Peterson,* 368 Ill. 59, a widow renounced her husband's will one day before the expiration of the permissible time. Holding that she was not estopped to renounce the will because she had qualified and acted as executrix, accepted payment of a legacy, and acted as trustee of a testamentary trust, we observed: "Under the circumstances it was immaterial whether the probate court knew or did not know that she had intended to receive the $20,000 in payment of the bequest to her under the will. It makes no difference whether the widow was fully advised as to her right to renounce the will at the time she accepted the bequest, for there is no element of estoppel in the case. No one had changed his position in reliance upon her acceptance of the bequest, and no one was harmed as long as she did not get more from the estate than that to which she was legally entitled after the renunciation. * * * The acceptance of an appointment as executrix of her deceased husband's will, without bond, did not create an estoppel against her, (*Pace* v. *Pace,* 271 Ill. 114,) and, by the same reasoning, the acceptance of a trusteeship under a trust created by the will did not estop appellant from renouncing the will, where it was not shown that anyone had changed his position to his detriment." As in many similar situations, the claimed estoppel in the *Kerner case* occurred prior to the renunciation. There is but little, if any, difference between executing a deed as coexecutor, as here, and acting as trustee of a testamentary trust, as in the *Kerner case.* Indeed, the coexecutors state that Donovan acted as trustee of a testamentary trust in joining as

coexecutor in the execution of the executors' deed under power of will. Moreover, the alleged acts constituting an estoppel occurred after Donovan had renounced the will and barred himself from claiming under it.

Admittedly, Donovan served as coexecutor from the date he qualified in this capacity. In continuing to act as executor and trustee after renouncing the will, Donovan's acts as executor were not inconsistent with the renunciation of the will and did not constitute a waiver. His wife's will made bequests and devises to him and also named him as one of three executors. Donovan has not claimed, taken or accepted any devise or legacy under the will but has continued to act in his official capacity as executor. For services as one of the executors incident to the administration of the estate, Donovan earned a fee. The will gave him nothing personally for serving as a personal representative. Donovan's claim for fees was not a claim as a legatee and devisee but, instead, for services rendered the estate as one of the testatrix's designated personal representatives. A real distinction obtains between benefits by inheritance and benefits earned. It does not follow that a renunciation of the former, namely, benefits by inheritance, includes a renunciation, also, of benefits accruing only from services rendered. In short, Donovan took in two capacities under his wife's will, one as a legatee and devisee and the other as executor. Upon filing his renunciation, Donovan barred himself from making any personal claim under the will. This being so, no duty rested upon him to renounce his appointment as executor merely because he elected, as he had the right to do, to renounce the bequests and devises to him made by the will. His official acts incident to the execution of the will did not affect his personal and individual rights following his renunciation as surviving spouse. Donovan did not waive and abandon his renunciation by acting as coexecutor and trustee under the will, and, since the evidence fails to show

the taking of any beneficial interest under the will, there can be no estoppel.

Margaret McClintock and Newman direct attention to a continued series of acts subsequent to the filing of the renunciation, including those described in the decree, which they assert are contradictory, inconsistent and irreconcilable with Donovan's renunciation. Accordingly, they maintain that these acts clearly constitute an abandonment and waiver by Donovan, equitably estopping him to assert the validity of his renunciation and, on the other hand, to deny the validity and effectiveness of the will as to him. Donovan joined in filing a Federal estate tax return which shows that he was claiming a fee of $2000 as coexecutor, the same amount, incidentally, as claimed by each of the coexecutors, Mrs. McClintock and Newman. No copy of the renunciation was filed with this return. So far as the record discloses, there is no requirement that a copy be filed. Apart from this, the return refers to the renunciation as follows: "Executors have deposited with the County Treasurer of Madison County, Illinois, for the use of the State of Illinois for inheritance tax purposes the sum of $4,000.00. Only a temporary receipt therefor was given since it is impossible to ascertain the exact amount of tax due, which will vary depending upon whether the widower's renunciation is effective and thereby secure a final receipt, the deduction for State inheritance tax is not claimed." There is no legitimate basis in the facts attending the filing of the Federal estate tax return suggesting a waiver by Donovan of his renunciation.

The coexecutors earnestly urge that Donovan's act in joining in the execution of the deed to the home real estate is an act inconsistent with his renunciation. Their principal point, in this connection, is that he executed the deed as coexecutor instead of as an individual, thereby accepting the devise. As a personal representative, it was his duty to execute the deed. The coexecutors say that, had he

stood by his renunciation, he would have taken an undivided one-half interest in fee in the property and the executors would have been unable to have sold the property and conveyed good title. This complaint would come more properly from the purchaser of the property. Donovan was acting solely in his representative capacity as executor after he had renounced and barred himself from claiming under the will. The property was conveyed by the executors in their official capacity, and, this being so, Donovan would be estopped to assert a personal claim against his own official act as coexecutor. (*Collins* v. *Wood,* 63 Ill. 285.) It may be noted that Donovan states in his reply brief that he has given the purchasers a quitclaim deed to the property. The purchasers, so far as the record shows, have made no objections, are not parties to this proceeding, and their rights and equities, if any, are not before us as an issue in this cause. (*Coles* v. *Terrell,* 162 Ill. 167.) In order for Mrs. McClintock to receive her one-half of the proceeds of the sale of the family residence, it was necessary for the provisions of the will in this regard to be satisfied. Donovan did not, by executing the deed as executor, waive and abandon his renunciation.

Donovan challenges the finding of the decree that he took many items of personal property from the home real estate, pursuant to the terms and provisions of the will. These items are described in a "List of articles selected by Michael F. Donovan from residence located at 505 Bond Street, Alton, Illinois" and in the supplemental inventory filed by the three executors. Two depositions of Donovan taken from him as an adverse party under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1949, chap. 110, par. 184,) were received in evidence by stipulation. From the first deposition taken, it appears that Donovan testified he personally owned some of the furniture and other personal property in the home real estate at the time of his wife's death; that he took seventeen or eighteen of the

items of personal property listed in the supplemental inventory which he owned and gave the rest to Mrs. McClintock on November 12, 1946; that, among the items belonging to him were an electric stove and a bedroom suite, inventoried at $50 and $35, respectively; that Mrs. McClintock wished to take everything, including these articles, but that he objected to her taking property which belonged to him, saying, "All I took was the property that I wanted and what I paid for, and some that was there I left that was paid for, like curtains." Donovan claimed that a Dodge automobile listed in the inventory belonged to him although, for convenience, title had been taken in his wife's name. He testified that, after her death, he continued to drive the car until his attorney informed him that Newman objected and, that, when he learned of Newman's attitude, he placed the car in a local garage rather than become involved in a controversy over its ownership. From the second deposition, it appears that Donovan again stated he took only articles he himself had purchased; that he prepared a typewritten list of the article because "I just wanted to have the list of the articles that belonged to me, that's all," and that he did not take many articles belonging to him. The coexecutors offered no testimony in rebuttal. Donovan having testified under section 60 of the Civil Practice Act as an adverse party, Margaret McClintock and Newman were bound by the testimony so elicited since it stands uncontradicted and unrebutted by countertestimony. (*Chance* v. *Kinsella,* 310 Ill. 515; *Luthy & Co.* v. *Paradis,* 299 Ill. 380.) The value of the property taken by Donovan was about sixteen per cent of the total value of the personal property listed in the supplemental inventory although, under the renunciation, he was entitled to one half of all the personal property. Uncontroverted testimony that Donovan merely took a small part of the furnishings of his home which belonged to him personally falls far short of proof that he accepted these articles of personal property

as a bequest under his wife's will and, assuredly, is insufficient to constitute a waiver and an abandonment of his renunciation.

The decree of the circuit court of Madison County is reversed and the order of the probate court is affirmed.

*Circuit court reversed; probate court affirmed.*