2024 IL App (2d) 230602-U
No. 2-23-0602
Order filed August 7, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | |
|---|---|
| *In re* THE ESTATE OF RONALD KRAMER, ) Deceased ) | Appeal from the Circuit Court of Kane County. |
| ) | |
| ) | No. 20-P-232 |
| (Sandy A. Kramer, as Executor of the Estate, ) | |
| Petitioner-Appellee, v. Diane E. Kramer, ) | Honorable |
| Respondent-Appellant, Kathy Kokoruz and ) | Joseph M. Grady, |
| Samuel Kramer, Respondents.) ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice McLaren and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court erred in estopping wife from renouncing her husband's will.

¶ 2    After the will of the decedent, Ronald Kramer, was admitted to probate, the decedent's wife, Diane E. Kramer, filed a renunciation of the will pursuant to section 2-8 of the Probate Act (755 ILCS 5/2-8 (West 2018)).  The executor of the decedent's estate, his daughter Sandy A. Kramer, filed a motion seeking to dismiss or estop the renunciation.  The trial court granted the motion to estop and later denied Diane's motion to reconsider.  Diane now appeals, arguing that there was no legal basis for the trial court's orders.  We vacate the orders and remand.

¶ 3                                    I. BACKGROUND

¶ 4    Diane was the decedent's third wife. The decedent's only children were the three children from his first marriage: Sandy (the executor) and the respondents Kathy Kokoruz and Samuel Kramer. During their marriage, the primary asset owned by the decedent and Diane was their home in Batavia, which was held in joint tenancy.

¶ 5    In 2017, Diane moved out of the home. In March 2019, Diane filed a petition for dissolution of marriage. In October 2019, Diane severed the joint tenancy by transferring her one-half interest in the Batavia home into a trust through a quitclaim deed. In November 2019, Diane's attorney sent a letter to the decedent's attorney with notice of the transfer and a copy of the deed. The letter stated that "[t]he filing of this Quit Claim Deed effectively allows each of the parties to bequeath their respective interests in [the Batavia home] to their children." The letter contained no reference to the statutory right of a spouse to renounce a will.

¶ 6    The decedent died a few months later, on January 23, 2020. At the time of his death, he and Diane were still married, as no judgment of dissolution had been entered.

¶ 7    In May 2020, Sandy petitioned to admit the will to probate and issue letters of office naming her as executor. The petition stated that the decedent's ownership of one-half of the Batavia home was the primary asset of the estate, along with personal property with an estimated value of about $10,000. The affidavit of heirship listed the decedent's three children, but not his wife Diane, as heirs under the will.

¶ 8    The executor was unable to locate and produce an original of the most recent will, which was dated January 2, 2020 (21 days before the decedent's death). Instead, the executor submitted a copy of the purported will along with affidavits from two witnesses attesting to its authenticity. The will, a fairly simple three-page document, named Sandy as executor and left her the entire estate. The will expressly disinherited the other two children, Kathy and Samuel, "[d]ue to prior

generosity shown" by the decedent. Other than stating that the decedent was "currently going through a divorce" to an unnamed person, the will did not mention Diane. The trial court admitted the will to probate and entered an order of heirship that listed Diane in addition to the three children.

¶ 9 On June 18, 2020, Diane filed a timely renunciation of the will. In July 2020, Kathy and Samuel filed a petition challenging the authenticity of the purported will.

¶ 10 According to the executor, the parties began discussing settlement of their disputes about the will in August 2020. A proposed settlement agreement among the three children was drafted under which "[t]he parties anticipated" that Diane would withdraw her renunciation of the will, Kathy and Samuel would dismiss their challenge to the purported will, and the estate would be divided equally among the three children after the payment of costs. A court order dated August 13, 2020, stated that the three children had "resolved the issues relating to [the will] by way of settlement." The trial court continued the case several times for status on the settlement, and Kathy and Samuel signed the agreement in February 2021. However, the executor offered various reasons for refusing to sign it and never did so.

¶ 11 In June 2021, Kathy and Samuel moved to enforce the settlement agreement, asserting that the executor had agreed to the settlement but then failed to execute the agreement. The executor's September 2021 response asserted that Diane was a necessary party to any settlement.

¶ 12 In October 2021, both the executor and Diane signed a contract to list the Batavia home for sale. The house was sold and the estate received $341,732.70 for its one-half interest in the home, with Diane's trust receiving the remainder.

¶ 13 According to the executor, in February 2022 Diane's attorney e-mailed the attorney for the estate with a "proposal for settlement," under which a full and complete inventory would be filed,

Diane would not object to Sandy's reasonable and necessary expenses, and the net estate would be divided equally among the three children. A settlement agreement among Diane and the three children was drafted. However, the executor did not sign this agreement either.

¶ 14    In June 2022, Kathy and Samuel filed objections (later amended) to the executor's report of inventory and accounting, asserting that the executor had improperly disbursed funds for her own benefit and had failed to list any of the decedent's financial assets.

¶ 15    So far as the record reveals, as of the end of 2023, the trial court had not yet ruled on Kathy and Samuel's challenge to the purported will, their motion to enforce the settlement, or their objections to the inventory and accounting, and the will had not been proven.

¶ 16    In March 2023, the executor filed a motion to dismiss or estop Diane's renunciation of the will. In it, she asserted that "all parties" agreed that they would settle their various disputes and that Diane would withdraw her renunciation, but then in January or February of 2023, Diane's attorney advised the executor that Diane no longer agreed to withdraw the renunciation. The executor argued that Diane should be estopped from renouncing the will because (1) the decedent and the executor had relied on the November 2019 letter stating that the partition of the Batavia home through the quitclaim deed "allow[ed] each of the parties to bequeath their respective interests in" the home to their children, and (2) the executor had relied on Diane's offers to settle.[1]

---

[1] The executor also argued that Diane's renunciation should be "dismissed" as defective in form because it did not attach any statement from her attorney pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). However, the trial court did not rule on this argument and, on appeal, the executor has abandoned it.

¶ 17 Diane argued in response that (1) the November 2019 letter did not contain any promise that Diane would not exercise her statutory right to renounce the will should the occasion arise, (2) the executor herself had refused to enter into any of the settlement agreements and thus could not assert any reliance on them, and (3) the executor had not identified any loss or detriment suffered by the estate that was caused by the alleged reliance on the letter or the settlement offers. Diane attached affidavits from herself and her attorney averring that at no time during settlement negotiations or the process of selling the Batavia house did either of them make any promises to the executor or the estate, or enter into any agreement with the estate apart from the listing and sales contracts.

¶ 18 The executor subsequently filed both an amended motion and a reply in support of her motion. The reply included an affidavit from the decedent's brother, a lawyer who had drafted the decedent's January 2, 2020, will, stating among other things that "[a]t the time of the drafting of said Last Will and Testament and the execution of the Last Will and Testament it was never contemplated that DIANE KRAMER would ever consider Renouncing the Last Will and Testament of RONALD N. KRAMER."

¶ 19 On July 19, 2023, without holding a hearing or oral arguments, the trial court entered an order granting the executor's motion to estop Diane:

"The Court finds that there is sufficient basis in the Pleadings and Documents relating to the Renunciation of the Will filed by DIANE E. KRAMER to enter an Order Estopping DIANE KRAMER from asserting the Renunciation of the Will and DIANE KRAMER is hereby Estopped from asserting the Renunciation of the Will previously filed on June 18, 2022 [*sic*]."

The order included a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that the order was final and there was no just reason to delay appeal of the order. On November 29, 2023, the trial court denied Diane's motion to reconsider and clarify the order, stating that it remembered the case and further stating:

"I think that when the property was sold, and she got the portion of the proceeds from the real estate, I think she's there. Plus I also saw the interaction of the parties, by and through their attorneys.

I think that she is estopped from claiming it. I'm not going to change anything."

Diane then filed this timely appeal.

¶ 20                                    II. ANALYSIS

¶ 21     The right of a surviving spouse to renounce a will and instead take a specified share of the estate, codified in section 2-8 of the Probate Act (755 ILCS 5/2-8 (West 2018)), has long roots in the law. It is designed to make the welfare of the surviving spouse paramount, allowing the spouse to decide which "method of taking"—under the will, or under the statute—"would be most advantageous to him or her." *In re Donovan's Estate*, 409 Ill. 195, 202 (1951). The right to renounce is firmly established: "if competent, the survivor has an absolute right to renounce the will of the deceased spouse by filing a renunciation." *First Nat'l Bank of Danville v. McMillan*, 12 Ill. 2d 61, 66-67 (1957). Nevertheless, there are circumstances in which courts have estopped a renunciation, including where the spouses entered into a prenuptial or antenuptial contract under which the surviving spouse agreed not to renounce (see generally *In re Estate of Feinberg*, 234 Ill. 2d 256 (2009); *Kirchner v. Morrison*, 320 Ill. 236 (1927)), or where the surviving spouse accepted benefits under the will that were inconsistent with renunciation (see *Hunter v. DeMay*, 124 Ill. App. 2d 429 (1970) (surviving spouse was estopped from renouncing deceased wife's will where

he lived on the property bequeathed to him under the will "for a considerable period of time, after his wife's death, in a manner consistent with an intent to accept the provisions of the will," and eventually sold the property to a third party)). However, estoppel of a spouse's statutory right of renunciation cannot be sustained "except upon the clearest and most convincing evidence." *Golden v. Golden*, 393 Ill. 536, 541 (1946).

¶ 22    In this case, the only reasons given by the trial court for its determination that Diane should be estopped from renouncing the will were that (1) she received a payment following the sale of the Batavia home, and (2) "the interaction of the parties." The first of these is not a valid basis for estoppel, as there is no evidence that Diane's trust received any more from the sale of the home than it was due as a prior owner of one-half of the property.[2] Thus, to the extent that the trial court's ruling was based on this factor, it lacks support in the record and is contrary to the manifest weight of the evidence.

¶ 23    As for the second basis cited by the trial court, "the interaction of the parties," the executor argues that the trial court's ruling estopping the renunciation is supported by principles of promissory estoppel. Diane argues that the executor did not prove the elements of promissory estoppel, and the imposition of estoppel on other grounds is not supported by legal authority. We examine each of these arguments in turn.

¶ 24                          A. Promissory Estoppel

---

[2] The executor asserts that Diane's trust received a "disproportionate" share of the sale proceeds rather than one-half, but she fails to support this assertion, citing only to the allegations of her own petition, rather than to any evidence in the record. We thus disregard this contention.

¶ 25    Under certain circumstances, promissory estoppel provides a potential remedy for those who rely to their detriment on a promise despite the absence of any mutual agreement by the parties on all the essential terms of a contract. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 55 (2009).  In this case, in order to establish the elements of promissory estoppel, the executor must show that: (1) Diane made an unambiguous promise that she would not renounce the will; (2) the decedent and/or the estate relied on that promise; (3) that reliance was expected and foreseeable; and (4) Diane's failure to fulfill the promise caused detriment. *Id.* at 51.  The executor must also show that the reliance was reasonable and justifiable. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 310 (1990).

¶ 26    The executor cannot meet these requirements.  To begin with, the executor cannot point to any unambiguous promise by Diane that she would not renounce the will.  The November 2019 letter merely stated that the partition of the Batavia home *allowed* the decedent to pass his interest in the home to his children.  This was a simple statement of fact, pointing out that, as the result of the partition, the decedent had a conveyable interest in the home—an interest that, if the partition had *not* occurred, would not exist at all, as under joint tenancy *all* of the home would have been transferred to Diane upon the decedent's death.  The letter did not contain any promise that Diane would refrain from exercising her statutory right to renounce the will, and no such promise can be construed from the letter.

¶ 27    Further, any reliance on this supposed "promise" was neither reasonable nor justifiable.  A spouse's right to renounce a will is one of the most widely known principles of the law of wills and estates.  The affidavit by the attorney brother of the decedent, stating that neither he nor the decedent anticipated that Diane might renounce the will, reveals surprising ignorance of the law rather than any justifiable reliance.

¶ 28    The other "promise" identified by the executor was the offer by Diane to enter into a settlement agreement under which Diane would withdraw her renunciation upon certain terms, including an equal distribution of the estate among the three children.  However, the executor admits that Diane did not make any *unconditional* offer to withdraw her renunciation; to the contrary, the offer was explicitly conditioned on the executor's acceptance of its terms.  The executor did not accept those terms, and Diane ultimately withdrew her offer to settle.  Because Diane did not promise to withdraw her renunciation *without* those terms and the executor did not accept those terms, the executor can neither show any unambiguous promise that Diane breached nor any reliance thereon.

¶ 29    As the executor cannot show the essential prerequisites of promissory estoppel, the court's ruling cannot be upheld under that doctrine.

¶ 30                              B. Equitable Estoppel Through Conduct

¶ 31    As Diane acknowledges, courts have sometimes estopped a spouse from renouncing a will on a different basis, finding that the spouse's actions demonstrated an intent to waive his or her right to renounce.  This intent can be seen most clearly where a spouse has signed a prenuptial or antenuptial agreement not to assert a claim against the decedent's estate.  See *Golden*, 393 Ill. at 540 (a spouse can, through an agreement made during the decedent's lifetime, effectively waive the right to renounce the decedent's will, but such an agreement must be proved by clear and convincing evidence); see also *Kirchner*, 320 Ill. at 236 (husband signed an antenuptial contract specifically releasing all rights to inherit from, or claim a statutory share of, his wife's estate; the contract could be enforced despite the wife's inclusion of a bequest to her husband in her will).  It is undisputed that no such written contract exists here.

¶ 32    Other less formal conduct by a spouse may also serve as a basis for equitable estoppel. However, courts have generally been reluctant to abrogate the statutory right to renounce. In considering whether a surviving spouse should be estopped from renouncing a will, courts consider whether the spouse's conduct showed a clear intent to take under the decedent's will rather than renounce. Courts also look to whether the spouse has received some benefit from the will that is inconsistent with renouncing the will.

¶ 33    In *Donovan's Estate*, 409 Ill. at 204-09, the supreme court discussed several prior cases involving claims of estoppel against renunciation, all revealing that spousal conduct rarely amounts to waiver. For instance, a widow's acceptance of rents on certain devised property did not amount to an election to take under the will, because she had an equal right to the rents if she claimed the property as her share following a renunciation. *Id.* at 204-05 (discussing *Schaffenacker v. Beil*, 320 Ill. 31 (1926)). Nor was a widow's agreement with the executor to rent out certain property and the sale of a small amount of personal property a sufficient basis to find estoppel, as the widow retained no more of the proceeds than the share that she would receive through renunciation, and thus it could not be said that she had elected to take under the will. *Id.* at 205-206 (discussing *Canavan v. McNulty*, 328 Ill. 388 (1927)). Similarly, the fact that the surviving spouse served as an executor for the decedent's estate and sold the decedent's home did not amount to an acceptance of the will, as those actions were not inconsistent with the spouse's renunciation of his rights under the will. *Id.* at 207-09.

¶ 34    The actions that the executor claims amount to a waiver of Diane's right to renounce are similar to those found insufficient by the supreme court in *Donovan's Estate*. As Diane's trust owned one-half of the Batavia home, she had an independent right to participate in selling the home that was entirely separate from any interest through the decedent's estate. Nor is there any

evidence that Diane accepted any benefit conferred on her under the will, as in *Hunter*, 124 Ill. App. 2d 429. Indeed, as the decedent did not make any bequest to Diane in his will, it cannot be shown that she took any benefit under the will that would be inconsistent with renunciation. See *Luepker v. Rieso*, 119 Ill. App. 3d 62, 66 (1983) (where the estate assets received by the surviving spouse were of lesser value than the widower's award he was entitled to, it could not be shown that he benefitted from the will in any manner that could support estoppel).

¶ 35 The final argument raised by the executor is that it is somehow unfair that Diane is willing to give up her right to renounce in exchange for a distribution of the estate that includes the expressly-disinherited children. However, the executor cites no legal authority suggesting that the owner of a property right—such as the statutory right to renounce—must dispose of that right in a manner pleasing to the executor. We therefore reject this argument. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (arguments must be supported by citation to legal authority); *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56.

¶ 36 "To work an estoppel, the acts alleged to constitute it must be unequivocally inconsistent with [the surviving spouse's] right afterward to renounce the provisions of the will and elect to take under the statute." *Canavan*, 328 Ill. at 395. As the executor cannot show any clear and convincing evidence supporting the trial court's imposition of estoppel against Diane, that ruling is against the manifest weight of the evidence and must be vacated.

¶ 37                                     III. CONCLUSION

¶ 38 For the reasons stated, the finding of estoppel by the circuit court of Kane County is vacated and the cause is remanded for further proceedings consistent with this decision.

¶ 39 Order vacated and cause remanded.